Debra A. MURPHY, Plaintiff–Appellant,

v.

ITT EDUCATIONAL SERVICES, INCORPORATED, Technical Institute Division, doing business as ITT Technical Institute, Defendant–Appellee.

No. 98–3580.

United States Court of Appeals, Seventh Circuit.

Argued Feb. 25, 1999.

Decided April 30, 1999.

John S. Knight (argued), Parrish & Knight, Fort Wayne, IN, for Plaintiff–Appellant.

Gary D. Johnson (argued), Baker & Daniels, Fort Wayne, IN, for Defendant–Appellee.

Before BAUER, WOOD, JR., and RIPPLE, Circuit Judges.

HARLINGTON WOOD, JR., Circuit Judge.

Plaintiff-appellant, Debra A. Murphy, as an employee of defendant ITT Technical Institute ("Institute"), failed to receive a hoped-for promotion to a different type of job at the Institute. This suit followed, alleging the denial of her promotion was motivated by sexual and disability discrimination in violation of Title VII of the Civil Rights Act of 1964, as amended by the Civil Rights Act of 1991, 42 U.S.C. § 2000e and 28 U.S.C. § 1331, and the Americans With Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12101 *et seq.* The district court by a Memorandum Decision and Order on September 9, 1998, entered summary judgment for the Institute on all issues. Plaintiff appeals. The parties in general accept the district court's outline of pertinent facts.

Our review is *de novo* to determine whether or not there may be a genuine issue of material fact, and whether or not the Institute was entitled to judgment as a matter of law. *Chiaramonte v. Fashion Bed Group, Inc.,* 129 F.3d 391, 395 (7th Cir.1997). All facts are to be construed in the light most favorable to plaintiff and all reasonable and justifiable inferences are to be drawn in favor of plaintiff. *Id.*

Plaintiff was hired by the Institute in June of 1994 as a telemarketer to work three days a week for a total of seventeen hours each week. Plaintiff had the responsibility of calling potential students who had requested information about the Institute so that appointments could be scheduled for an Institute sales representative to meet individually with the students. Sales representatives would then follow up by meeting personally with the potential students at the appointed time, often in the students' homes, in order to supply the desired school information.

Plaintiff was hired on a part-time temporary basis. Telemarketers ordinarily worked twenty hours per week, but plaintiff worked only seventeen hours a week so as not to exceed Social Security Administration limits on her earned income which would put her Social Security benefits in jeopardy. She therefore worked only on Tuesdays, Wednesdays, and Thursdays, but had no set work schedule on those days as she was free to determine her own work hours. Her work hours were very flexible because the telephone calls she had to make to student prospects were not scheduled by prior appointments.

Plaintiff, however, conceded that many weeks she did not work the full seventeen hours which were required. In fact, during her forty weeks as an Institute tele-

marketer, she failed to work her required hours at least one-third of the time. She explained these absences were the result of attending her grandmother's funeral, taking her daughter to doctor's appointments, and periodic illnesses, etc. There were no complaints by the Institute about the plaintiff's work hours as a telemarketer. No dissatisfaction with her work as a telemarketer was expressed to plaintiff and her excuses for her absences were always accepted.

Plaintiff had a disability which plaintiff says everyone at the Institute knew about. It is known as "carpal tunnel syndrome," a repetitive motion condition. However, plaintiff's disability, diagnosed in 1986, did not affect her work as a telemarketer. Her disability required no accommodation and she requested none.

We must review the factual record and allow reasonable inferences which can be drawn from the record in a light most favorable to the nonmoving party. *Sarsha v. Sears, Roebuck & Co.*, 3 F.3d 1035, 1038 (7th Cir.1993). While employed as a telemarketer, plaintiff discussed with Toby Hayes, the highest ranking employee in the Institute's marketing department, the possibility of her becoming an Institute sales representative, a promotion. Plaintiff had, however, already submitted a letter of resignation to accept what she considered to be a better position with another company. Hayes told her that he had heard about her recent letter of resignation and wanted to talk to her before her resignation became effective. He thought, he said, she would make a good sales representative for the Institute. Plaintiff did not anticipate that her disability would affect her new duties as a sales representative.

During this time, Hayes told plaintiff that an Institute sales position had become available in a nearby area. Applying for this position, plaintiff underwent testing, was interviewed by the Institute Manager of Recruitment, Luther McDonald, and was also interviewed by Hayes. Since that Institute promotion possibility looked fa-

vorable for plaintiff, she did not resign but remained at the Institute as a telemarketer.

There was a final interview for plaintiff scheduled with Jack Cozad, a long-time Institute employee who, as director of the Institute, held the highest Institute position in the Fort Wayne area where plaintiff was employed. Cozad had not been involved in plaintiff's original hiring as a telemarketer. McDonald worked directly under Hayes and Hayes reported directly to Cozad.

Before his interview with the plaintiff, Cozad consulted the Corporate Human Resources Office. As he explained in his deposition, Cozad was seeking interview guidance because he understood plaintiff had a disability. He was concerned about conducting the interview with plaintiff properly in the event any issue was raised about her disability. The ADA was fairly new at that time, and Cozad had never interviewed anyone with a disability since the Act had been in force.

■ There is not agreement among the parties as to any reasonable inferences to be drawn in plaintiff's favor from those facts. However, any circumstance subject to any disagreement between the parties does not qualify, in our view, as a genuine issue of material fact so as to defeat summary judgment. *See* Fed.R.Civ.Proc. 56(e) ("an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading"); *Adusumilli v. City of Chicago*, 164 F.3d 353, 361 (7th Cir.1998) ("party needs more than scintilla of evidence ... to defeat summary judgment").

The district court found, in the absence of any evidence to the contrary, that Cozad was the highest Institute executive at the Fort Wayne premises and he had the sole responsibility for the Institute decision not to promote plaintiff to the sales representative position. In his deposition, Cozad made it clear that it was his decision alone, and that it was made without any other

"human input" whatsoever. The only "human input" exception was that he did examine the Institute's employee time records as regarded plaintiff's telemarketer attendance.

The district court further noted that, based on their depositions, neither Hayes nor McDonald had any part whatsoever in Cozad's final decision about not promoting plaintiff. Neither Hayes nor McDonald had any discussions with Cozad about Cozad's decision. McDonald testified he had no relevant discussion with either Hayes or Cozad. He only made his favorable recommendation of plaintiff and sent that recommendation first to Hayes and then up the executive chain to Cozad. Cozad, Hayes, and McDonald all agreed that Cozad alone made the ultimate decision. That is important as relates to the actions of Hayes and McDonald.

The district court noted that it was not unmindful of plaintiff's argument that the sales representative decision by Cozad had at least been a "collective" decision in which both McDonald and Hayes had input. The court, however, could find no evidence whatsoever to suggest that the "final decision" was anything but Cozad's, nor do we from our own examination of the record.

■ There is no evidentiary basis for plaintiff's "collective decision" claim. *See Matsushita Elec. Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) (finding that nonmoving party may not rely on conclusory allegations, unsupported by the record, in order to defeat summary judgment). This claim appears to be nothing more than an unsubstantiated effort on plaintiff's part to avoid the fact that Cozad alone made the decision. There is no evidence to suggest that Cozad's decision was based on anything except his own business judgment. Plaintiff's attendance habits, Cozad decided, did not justify promotion; her erratic attendance record could not be risked in the new and more demanding position requiring definite appointments to be kept.

Plaintiff claims that Hayes suggested she forward a letter to Cozad explaining her disability. Her understanding was that the letter might be helpful in allaying any concern about her disability affecting her performance in the sales representative position. That letter was intended to obviate the "concern" about plaintiff's disability which it is said Cozad had expressed to Hayes. That "concern" of Cozad, however, when examined in context, was not concern about plaintiff's disability itself possibly affecting her work, but was Cozad's "concern" about conducting a proper interview under the new ADA so as to avoid some inadvertent violation of the new Act. Nothing shows that her disability was a factor in Cozad's promotion decision.

Plaintiff claims, however, that Hayes told her later that she was not promoted because of her disability. Hayes denies that statement attributed to him, but for purposes of summary judgment, plaintiff's claim about the Hayes' conversation is accepted.

Plaintiff also alleges that McDonald told her she failed to get the sales representative promotion because the Institute wanted a male as a sales representative in that particular area. It was found during this period that the Institute hired seven outside sales representatives to conduct the in-person interviews at appointed times arranged by telemarketers. Of those new hires, four were males and three were females. This cannot be viewed as evidence of gender bias. As to the vacancy which plaintiff had sought in a particular area, a female was hired for that position. There is nothing in the record to suggest that the Institute harbored or acted upon any gender or disability motivations which it tried to hide with pretextual excuses.

The trial judge labeled those claimed statements of Hayes and McDonald about disability and gender, when viewed in context, as being nothing more than the speculation of Cozad's subordinates as to Cozad's motivation for his denial of the promotion. Citing to *Chiaramonte*, 129

F.3d at 397, where we held that statements by non-decisionmakers amounting to speculation as to the thoughts of the decision-maker are irrelevant, the district judge noted there was no evidence that what plaintiff claims Hayes had told her (that she was not promoted due to her disability) was intended as any expression of Cozad's motivation for his employment decision. The indefinite comments and speculations of McDonald and Hayes, non-decision-makers, upon which plaintiff attempts to rely, provide no basis for charging Cozad or the Institute with any form of discrimination. *See id.*

Furthermore, both McDonald and Hayes denied any knowledge of Cozad's motivation for not promoting plaintiff. They had only their own speculations, but even those, as mentioned above, were not consistent. Those speculations do not provide an evidentiary foundation to support any of plaintiff's claims or her attempt to draw any favorable, reasonable inferences from that evidence.

Whether plaintiff attempts to prove her claims of disability or sex discrimination by either direct or circumstantial evidence, or whether she attempts the indirect burden-shifting method of proof under Title VII as was first set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), plaintiff can offer only argument and baseless inferences. The Institute explained its reasonable legitimate business rationale for its decision. That explanation must prevail over plaintiff's arguments and speculation which are merely substitutes for the lack of evidence. There was no proof of pretext.

Cozad was aware of plaintiff's disability, but there is no evidence that her disability or her gender had the slightest influence on Cozad's decision. When what plaintiff relies on as evidence to the contrary is examined, it is seen to be no more than irrelevant and unsupported supposition and argument. *See Matsushita*, 475 U.S. at 587. Nor does any of plaintiff's evi-

dence support any reasonable inferences which might support plaintiff's claims. *Id.*

■ Plaintiff's disability was of no concern to her supervisors or to Cozad beyond his concern about conducting a proper interview. A company seeking guidance about how to properly comply with the new ADA would otherwise be in the untenable position of being charged with fault no matter what it did. In addition, this court does not pretend to be able to run the Institute better than the Institute can run itself in the making of personnel decisions according to its business judgment, and should not try. The personnel decisions of the company may not be good ones, sometimes even harsh, but unless they violate some aspect of federal law, for instance, age, race, or gender discrimination, those business decisions are no business of this court. *Dale v. Chicago Tribune Co.*, 797 F.2d 458, 464 (7th Cir.1986).

It appears that the non-decision-makers may have encouraged plaintiff to delay her resignation for the prospect of being given the promotion she wanted, but there is no showing that encouragement was done in bad faith. When plaintiff finally did resign, it is not denied that she left for a better job with higher pay and benefits. In the district court, plaintiff first claimed her resignation had been a constructive discharge, but after that claim was also ruled on adversely to plaintiff by the district court, she has not pursued it here.

In our recent case of *Waggoner v. Olin*, 169 F.3d 481, 485 (7th Cir.1999), this court affirmed summary judgment in behalf of the company defending an ADA employment claim which had resulted from the discharge of that plaintiff. In that case, the plaintiff also had a disability, but her termination had nothing to do with her visual disability as plaintiff had claimed. The discharge was found justified as a matter of law "due to her excessive erratic absences ..." and being "tardy." *Id.* at 482. Plaintiff in the present case was not discharged or even disciplined for her tele-

marketing attendance record because of its built-in flexibility. Her excuses were always accepted by her superiors.

However, Cozad, in assessing plaintiff's attendance record, could and did reasonably decide as a matter of good business judgment, even considering plaintiff to be otherwise qualified, that plaintiff's attendance habits might not sufficiently adjust to the strict requirements of the outside sales representative position, and, in any event, did not merit the promotion. The Institute did not need to knowingly assume the risk of getting itself into a similar "erratic absences" situation like that from which the employer escaped in *Waggoner.*

The district court gave all plaintiff's claims careful consideration before granting the Institute summary judgment. A genuine issue of material fact requires more than a showing of "some metaphysical doubt as to the material facts." *Matsushita,* 475 U.S. at 586 (citations omitted). It cannot be said in the circumstances of this case that the record taken as a whole could possibly lead a rational trier of fact to find some genuine factual issue for trial. *See id.* at 587 (citation omitted). We find no fault with the district court's entry of summary judgment for the Institute in declining to substitute its business judgment for the nondiscriminatory business judgment of the Institute.

AFFIRMED.

RIPPLE, Circuit Judge, dissenting.

It is true that Cozad, Hayes and McDonald all agreed that Jack Cozad, Director of ITT, was the ultimate decisionmaker. Ms. Murphy does not challenge that point on appeal. Because Cozad had sole responsibility for the decision not to hire Ms. Murphy as an outside sales representative, "any direct evidence supporting

the discrimination claim must relate to [Cozad's] motivation for the [decision]." *Chiaramonte v. Fashion Bed Group, Inc.,* 129 F.3d 391, 396 (7th Cir.1997), *cert. denied,* —— U.S. ——, 118 S.Ct. 1795, 140 L.Ed.2d 936 (1998).

Ms. Murphy offers evidence that I believe is sufficient to create a genuine issue of material fact concerning Cozad's motivation for refusing to hire her for the position. First, Cozad's written statement clearly reflects his initial concern about Ms. Murphy's disability. Even before interviewing Ms. Murphy for the position as outside sales representative, he sought the advice of his human resources manager about what he could or could not ask Ms. Murphy about her disability.[1] Although he attested in his affidavit that he had no reason to believe that Ms. Murphy's disability would affect her ability to perform the duties of a sales representative, he did ask why she worked only 17 hours a week in her telemarketing position. In addition, Cozad stated unequivocally in his deposition that Ms. Murphy was qualified for the position; nevertheless, his focus seemed to be on her disability. Cozad's after-the-fact explanation for his concern—that he was not familiar with the ADA and did not want to make a fundamental mistake when questioning her about her disability—does not comport with his assertion that he knew the disability would not be a factor.[2]

Cozad also admitted that he had expressed his concern about Ms. Murphy's disability to Hayes. That admission leads to the second significant piece of evidence, Hayes' memo. Hayes stated in that memo that Cozad had discussed with him "his concern about the disability issue":

> Jack [Cozad] did discuss with me of his concern about the disability issue. He

---

**1.** Cozad's written statement stated, in part:
> Before I interviewed Debra for the position of representative, I talked with you [Lisa Cardona, manager of personnel] concerning what I could ask her in the interview. I knew at that time that she was on disability from her former job. Per your recommendation, I asked her why she was only able

to work 17 hours and she explained to me her situation. She stated that it was no longer a problem.
R.26, Ex. IX.

**2.** It is noteworthy, as well, that ITT hired 7 other sales reps, none of whom had a disability, but did not hire Ms. Murphy.

was advised ... about how to address this question. I did tell Debra [Murphy] that a letter explaining her disability situation might help explain that she was not a risk for hire.

R.26, Ex. VII. Indeed, on the basis of his conversation with Cozad, Hayes suggested to Ms. Murphy that she write a letter explaining her disability to show she wasn't a "risk for hire."

The majority dismisses Hayes' memo and other statements from his deposition as the "indefinite comments" of a non-decisionmaker, the mere speculation of Cozad's subordinate concerning Cozad's thoughts and motivations. However, the majority has mischaracterized Hayes' comments; Hayes clearly and definitively reported that he had had a conversation with Cozad (verified by Cozad) and that Cozad was concerned about Ms. Murphy's disability. He apparently addressed his superior's concern by asking Ms. Murphy to write a letter explaining her disability. Ms. Murphy did write that letter, assuring the company that "the job you describe I am physically capable of performing." R.26, Ex. VIII. There is no dispute about these occurrences. Hayes' memo and actions are relevant evidence of Cozad's intent.

This case is very different from *Chiaramonte*, upon which the majority relies. In *Chiaramonte*, the non-decisionmakers denied making the statements that Chiaramonte claimed were evidence of the decisionmaker's motivation. *See* 129 F.3d at 397. In this case, however, Hayes reiterated the memo statements in his depositions; more importantly, Cozad himself admitted discussing his concern about Ms. Murphy's disability with Hayes. Of course, Cozad later reported that his reason for the concern was that he wanted to avoid inadvertently violating the ADA. Cozad's asserted justification for his conversation with Hayes simply raises a genuine issue of material fact as to the real motiva-

tion for his not hiring Ms. Murphy. When we construe the evidence in the light most favorable to the plaintiff, Ms. Murphy, and draw all reasonable and justifiable inferences in her favor, as we are required to do, it seems clear that Hayes' statements, corroborating the decisionmaker's deposition testimony but reflecting a different motivation, are extremely relevant to our inquiry because they "relate to the motivation of the decisionmaker." *Id.* at 396 (quoting *Cheek v. Peabody Coal Co.,* 97 F.3d 200, 203 (7th Cir.1996)).

The majority also holds that Ms. Murphy failed to establish discrimination under the indirect burden-shifting method because ITT's reason for not hiring or promoting Ms. Murphy, her absenteeism, was a valid nondiscriminatory business judgment. Again I respectfully must disagree. It is undisputed that the attendance policy for telemarketers was flexible, that Ms. Murphy met all expectations of her superiors under that policy, and that her record contained no criticism whatsoever of her attendance on that job.[3] This certainly is not a case of repeated absenteeism that is tantamount to the "unsatisfactory job performance" that we found in *Oates v. Discovery Zone,* 116 F.3d 1161, 1171 (7th Cir.1997). Moreover, Ms. Murphy handled the telemarketer's job with no accommodation to her disability and told ITT that her disability would have no impact on her ability to do the outside sales representative position. Yet Cozad focused on her disability, all the while denying such a concern, and never told her that her attendance performance as a telemarketer was the reason she was not hired as a sales rep. There is a genuine issue of material fact whether Cozad's decision was based on her attendance record, in light of his knowledge of the difference in attendance expectations between the two jobs, or on her disability. Had the majority construed all facts in the light most favorable

**3.** Although the majority noted that her attendance records indicate that she worked less than 17 hours about one-third of the time, Ms. Murphy points out that she worked more than 17 hours many weeks and that, over her entire work period, she averaged more than 17 hours per week.

to Ms. Murphy, the non-moving party, it would have concluded that Ms. Murphy has provided sufficient evidence that her disability was a "determining factor" motivating Cozad's decision. I therefore would allow a jury to determine whether Cozad's express reason for not hiring Ms. Murphy as a sales representative, her attendance record in the telemarketing position, was pretextual and unworthy of credence. I respectfully dissent.