Linda SWARTZ, Plaintiff,

v.

MCDONALD'S CORPORATION,
Defendant.

No. 3:98CV0479RM.

United States District Court,
N.D. Indiana,
South Bend Division.

Jan. 28, 2000.

Joseph E. Allman, Macey, Macey and Swanson, Indianapolis, IN, for Linda Swartz, plaintiff.

Steven F. Pockrass, Mark W. Ford, Johnson, Smith, Pence & Heath LLP, Indianapolis, IN, for McDonalds Corporation, defendant.

### MEMORANDUM AND ORDER

MILLER, District Judge.

Linda Swartz worked for McDonald's Corporation until autumn 1996. The parties dispute the circumstances under which her employment was terminated, but Ms. Swartz contends that McDonald's violated the Americans with Disabilities Act (the "ADA"), 42 U.S.C. § 12101 *et seq.*, in the course of her employment's termination. McDonald's moved for summary judgment, and Ms. Swartz moved to strike some of the papers McDonald's submitted with its

motion. A scheduled hearing was canceled when the trial of another case ran longer than expected; to reschedule the hearing now would simply delay the case's resolution. For the reasons that follow, the court grants Ms. Swartz's motion to strike in part, but also grants McDonald's summary judgment motion.

A motion for summary judgment should be granted when there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law. In determining whether a genuine issue of material fact exists, "a trial court must view the record and all reasonable inferences drawn therefrom in the light most favorable to the nonmoving party." To defeat a motion for summary judgment, the nonmoving party cannot rest on the mere allegations or denials contained in his pleadings, but "must present sufficient evidence to show the existence of each element of its case on which it will bear the burden at trial." However, neither presenting a scintilla of evidence, nor the mere existence of some alleged factual dispute between the parties or some metaphysical doubt as to the material facts, is sufficient to oppose a motion for summary judgment. The party must supply evidence sufficient to allow a jury to render a verdict in his favor.

*Robin v. Espo Engineering Corp.*, 200 F.3d 1081, 1083 (7th Cir.2000) (citations omitted).

The parties dispute nearly everything about Ms. Swartz's termination and the events leading up to it. Most fundamentally, Ms. Swartz contends that McDonald's fired her, and McDonald's contends that Ms. Swartz resigned her employment. The court relates the facts as a jury might find them on the basis of the summary judgment record, if the jury resolved all credibility issues in Ms. Swartz's favor and drew all reasonable inferences favoring her position. The court endeavors to note the factual disputes as it narrates the facts, but the narration may be incomplete.

Ms. Swartz worked at McDonald's airport store in South Bend from 1987 to 1996. She began as a drive through cashier/order taker, but by 1993, her eyesight had deteriorated to the point she could no longer do that work. She was assigned to a position McDonald's effectively created for her: the support position/back room/lobby and restroom crew person position. She worked a part-time schedule. No one else was assigned to Ms. Swartz's position when she was not at work.

Ms. Swartz suffers from grand mal seizures, both at and away from work—sometimes three or more seizures in a single shift, and sometimes none at all. Her seizures last a matter of minutes, rendering her first unconscious, then disoriented. She has experienced this seizure disorder for the better part of two decades. In light of her seizure disorder, McDonald's allowed her to spend most of her time working in one crew person work station. Ms. Swartz's seizures are not fully controllable by medication, though some medicines have helped. She doesn't always take her medicine as prescribed, but when she does, the seizures do not stop altogether. Her doctor, Dr. Michael Helms, assumes the seizure disorder is permanent.

Ms. Swartz's seizures affect her life profoundly. She can't drive. She ventures into public only reluctantly, lest a seizure lead to an unwanted ambulance trip. At home, she places teddy bears around her bed to cushion her environment, and pads the sharp edges of her tables. Cooking on a stove is far too dangerous, given the risk of a seizure. Other activities, such as doing dishes and using the bathroom, are unavoidable and are affected by her seizures.

Her seizures affected what she could do at work for McDonald's, too, and McDonald's (which pursues a special needs hiring program) accommodated those problems while she worked there. After seizures, she would be allowed to rest for five or ten minutes before resuming work. She worked a unique shift, identified the

days on which she would work, took time off as needed, called in when she was ready to return, and then was placed back on the schedule. McDonald's agrees that Ms. Swartz was able to handle all the job assignments she was given.

Ms. Swartz began receiving monthly Social Security disability insurance benefits and Medicare health insurance in 1993 due to depression, post traumatic stress disorder, headaches, pseudoseizures, hypertension, left ventricular hypertrophy, and a limited ability to cope with stress. Her employment with McDonald's paid too little to affect her disability status with the Social Security Administration, but she earned too much to qualify to supplemental security income ("SSI") benefits.

Dwayne Jude became the store's second assistant manager, and Ms. Swartz's supervisor, in March 1996. Mr. Jude, according to Ms. Swartz, reduced her hours and sent her home after seizures, leading her to fear that her job might be in jeopardy

In September 1996, the Social Security Administration requested updated medical and employment information. At Ms. Swartz's request, Dr. Helms sent the Social Security Administration a letter dated September 25, 1996. Ms. Swartz made several calls to the airport McDonald's to get employment information for the Social Security Administration. On September 27, Ms. Swartz's mother picked up a letter from the store en route to the Social Security Administration. That letter said Ms. Swartz's employment had been terminated because of her seizures. Ms. Swartz was surprised and upset upon reading the letter.

Ms. Swartz and her mother finished their trip to the Social Security Administration. Having been terminated from her employment, Ms. Swartz applied that day for SSI benefits, which ultimately increased her monthly Social Security benefits by $51.00. She signed a form entitled "Report of Continuing Disability Interview" that said her condition had become worse, that she was experiencing more

seizures, that she did not feel able to return to work. She also signed another form saying her work with McDonald's ended on September 13 due to her "condition." Ms. Swartz says, so the court must accept, that this information on those forms was due to mistake—either mistake by the Social Security person dealing with the forms, or by Ms. Swartz as she marked boxes.

After leaving the Social Security offices, Ms. Swartz called Mr. Jude to see why she had been fired. Mr. Jude was not at the store, and another manager told Ms. Swartz she just wasn't on the schedule and should call back the next day. Daily calls produced the same information; in one such call, a manager told her she was to call the regional office in Elkhart about the termination. Ms. Swartz did so, and was told that "terminated" did not mean "fired," but rather meant only that she was being placed "on the back burner for a while" for safety and health reasons. When Ms. Swartz asked for clarification, she was told she would be off the schedule until she got herself together. Believing herself to be "together," Ms. Swartz was unappreciative of the comment (and of the termination), and so informed the person to whom she was speaking. Ms. Swartz said that if she was terminated, she wanted her profit sharing money, and she was told that money would not be released unless Ms. Swartz's doctor said Ms. Swartz was disabled and unable to work. Ms. Swartz asked Dr. Helms to write such a letter, and he did so on October 2, 1996. Dr. Helms wrote that he understood Ms. Swartz had been terminated for health and safety reasons due to her seizures, and he agreed there was little chance that she could resume her employment if the seizures continue, and that Ms. Swartz was completely disabled due to her medical condition.

Ms. Swartz took Dr. Helms's letter to Mr. Jude at the airport store. Mr. Jude told Ms. Swartz to have Dr. Helms remove the "terminated" language from the letter.

Ms. Swartz tried to comply, but Dr. Helms wouldn't change it, so Ms. Swartz went back to the airport store and left the letter with the drive-through person.

The court, as it must at the summary judgment stage, assumes that all of the facts just recited are true. If a trial were conducted, McDonald's would present evidence painting a far different picture. As McDonald's understands things, Mr. Jude became Ms. Swartz's friend, giving her rides home after work and receiving candy and gifts from her. He learned that she was having difficulty paying for her prescriptions, and so, to make her medicine last longer, was taking it less frequently than was prescribed. McDonald's notes documents indicating that Ms. Swartz had been hospitalized in a psychiatric ward for several weeks due to a June 1996 suicide attempt, that her seizures were severe in the late summer of 1996, and that she was feeling suicidal again in September 1996. Ms. Swartz had been off work for about two weeks in September, had stopped taking her anti-seizure medications, and had returned to work only the day before the September 27 letter purporting to terminate her.

As McDonald's sees the case, Ms. Swartz asked Mr. Jude to write the September 27 letter to help support her position with respect to the Social Security Administration and her disability benefits. Mr. Jude says he understood that Ms. Swartz could only receive a full benefits package (including prescriptions) if she stopped work, so that he should write that her seizures prevented her from working. He says he thought he was doing Ms. Swartz a favor.

Ms. Swartz ultimately was terminated on October 11. In McDonald's view of the case, she was terminated because she didn't come to work or communicate about the need for further leave—in other words, because she abandoned the job.

 McDonald's also would seek to present additional evidence at trial that might lead the jury to discount the accuracy of Ms. Swartz's recollection of the events, such as Ms. Swartz's admission of paranoia-like tendencies, a tendency to exaggerate problems and to be self-destructive, and to use of marijuana as a pain reliever (which Dr. Helms says can affect memory). A summary judgment motion provides no occasion for a court to weigh credibility or to decide what version of fact is likelier true, so the court makes no use of that evidence—that would be for the jury. The court includes McDonald's version of the events only to allow a more complete understanding of the case.

Ms. Swartz moved to exclude evidence about her marijuana use because the probative value is substantially outweighed by the risk of unfair prejudice. Fed.R.Evid. 403. The court disagrees: in light of Dr. Helms's testimony that marijuana use can affect memory, her use during the time at issue here is relevant to her ability to observe, recall, and narrate events. In light of recent national debate about the medical use of marijuana, the court does not believe that a jury would make improper use of Ms. Swartz's use of marijuana to ease the pain that accompanies her disability.

 Ms. Swartz also moved to strike several items that accompanied McDonald's summary judgment motion. The court agrees with Ms. Swartz on some of the points she raises. For example, the court does not believe that the rule of *United States v. Brown*, 688 F.2d 1112 (7th Cir.1982), equating production with authentication, can reasonably be stretched (a) to create a hearsay exception, or (b) to include documents a party offered to produce, but did not produce. But the only challenged evidence that affects the facts set forth above, and assumed to be true for summary judgment purposes, are the Social Security documents that Ms. Swartz signed. Ms. Swartz contends that those documents should be stricken because the forms contain information that she did not place on them. She did, however, sign the documents, and did so under certain certifications. Federal Rule of Evidence 901(a)

makes exhibits admissible over an authentication objection if there is evidence from which the trier of fact could find the exhibit is what its proponent claims it is. Ms. Swartz's signature accomplishes that: McDonald's claims these are documents in which Ms. Swartz made and adopted certain statements. Her contention that she did not adopt the statements are matters for the trier of fact, and so affect weight, rather than admissibility.[1]

The ADA provides that no covered employer "shall discriminate against a qualified individual with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). A "qualified individual with a disability" is identified as "an individual with a disability who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8). A reasonable jury could find that Ms. Swartz's seizure disorder substantially limits one or more of her major life activities. Her case would be stronger had she been more faithful in administering her medications, but there is enough in this record to allow a jury to find that her seizures would not cease with steady use of prescribed medication.

A reasonable jury also could find that Ms. Swartz was terminated because of her disability: Mr. Jude's letter provides ample basis for such a finding. McDonald's argues that Mr. Jude did not intend to fire Ms. Swartz through the letter, but the jury would be free to accept or (more importantly for summary judgment purposes) reject Mr. Jude's explanation of the letter. It is true that Mr. Jude was not authorized to fire Ms. Swartz, but the jury might conclude that McDonald's ultimately ratified the termination.

 No reasonable juror could find, though, that Ms. Swartz was a qualified individual with a disability. To be a qualified individual with a disability, "one must be 'able to meet all of a program's requirements in spite of [her] handicap.'" *Waggoner v. Olin Corp.*, 169 F.3d 481, 484 (7th Cir.1999) (*citing Southeastern Community College v. Davis*, 442 U.S. 397, 99 S.Ct. 2361, 60 L.Ed.2d 980 (1979)). The jury would have to decide whether she could perform the essential functions of the job and, if not, whether any reasonable accommodation would enable her to perform the job. *Id.* Just before she left McDonald's, Ms. Swartz was working as a "Crew Person: Support Person/Backroom/Lobby and Restroom/Outside Area Maintenance Person." McDonald's defines the essential functions of the Support Person/Backroom/Lobby and Restroom/Outside Area Maintenance Person as follows:

> Monitors stockroom and backroom security, keeps floor and stairway clean, keeps backroom, storage and sink areas organized, keeps walk-in clean, acts as a support person for production (i.e., changes syrup tanks, meat supply, ice), assists lobby person as required (changes liners, floor cleanliness, bathrooms), keeps outside lot clean (castle bin, windows, walks, signs), assists in

1. Each side seems to see itself as free to explain away documents that appear to bind, while insisting that the adversary be strictly limited to papers prepared in the adversary's name: McDonald's, for example, pooh-pooh's Mr. Jude's letter while seeking to carry Ms. Swartz out of court on the Social Security papers she signed, ignoring her attempted explanations. Ms. Swartz, of course, views the papers in the opposite manner. As to each, the paper is evidence from which the jury could decide what was said in the letter was true—whether it be that Ms. Swartz was fired because she is disabled, or that Ms. Swartz believed she could not work—and the explanations are evidence for the jury to consider along with the papers. Since Ms. Swartz is the party opposing summary judgment, the court must assume, for today's purposes, that Mr. Jude's letter meant what it said, and that mistakes infected Ms. Swartz's statements to the Social Security Administration.

stocking, maintains towel supply, unloads supplies from transporter.

McDonald's "is entitled to define the job in question, in terms of both its essential functions and the qualifications required for it." *Webster v. Methodist Occupational Health Centers. Inc.,* 141 F.3d 1236, 1238 (7th Cir.1998). Under the ADA, "if an employer has prepared a written description before advertising or interviewing applicants for the job, this description shall be considered evidence of the essential functions of the job." 42 U.S.C. § 12111(8). McDonald's had not required Ms. Swartz to perform all of her crew position's essential elements, but the ADA doesn't ask whether the employer might let the employee not do the job in its entirety; it asks whether the employee can perform the essential functions.

Ms. Swartz bears the burden of coming forth with evidence to show that she can meet these requirements. *Waggoner v. Olin Corp.,* 169 F.3d at 484. "As a general matter ..., absent some such affirmative showing of the plaintiff's ability to perform the essential functions of the position, there will be no genuine issue of material fact as to whether the plaintiff is a 'qualified individual' and the employer will be entitled to judgment as matter of law." *Weigel v. Target Stores,* 122 F.3d 461, 468 (7th Cir.1997). Ms. Swartz has not come forth with evidence that would allow a reasonable jury to find that she could perform the essential functions of the job, with or without reasonable accommodation.

As noted above, to be a qualified person, one must be "able to meet all of a program's requirements." *Waggoner v. Olin Corp.,* 169 F.3d at 484 (*citing Southeastern Community College v. Davis,* 442 U.S. 397, 99 S.Ct. 2361, 60 L.Ed.2d 980 (1979)). Ms. Swartz says she was "capable of performing" the duties of her position; her conclusion is neither sufficient to withstand summary judgment, nor supported by the record. In her deposition, she said:

Q ... At the time you were fired from your job, whether that was the end of September or first of October of '96, were you capable of performing your job at McDonald's as you had performed it previously?

A. Yes, I was.

In her Declaration in opposition to summary judgment, she said:

At the time I was fired from my employment with McDonald's, I may have been disabled to a large extent, and unable to do very many jobs, but I could perform the duties of my job with McDonald's, with the ten to twenty minute accommodation of rest from my job that I had received for about ten years following a seizure at work.

Her statements can prove that she did the jobs she was asked to do (a point McDonald's does not seem to dispute), but do not demonstrate capability of performing all the essential functions of the position. In Ms. Swartz's statement of genuine issues, she said "she is a qualified individual with a disability because she performed almost all of the duties of the crew person work station Support Position/Backroom/Lobby and Restroom." Ability to perform almost all of the duties isn't enough to trigger ADA protection.

Ms. Swartz describes her work duties in 1995 and 1996 as doing the dishes, cleaning the lot, lobby and bathrooms, disassembling the ice cream and milkshake machines and infrequently preparing french fries. Swartz Dep., at 169. According to Mr. Jude, Ms. Swartz did not monitor the stockroom or backroom security, or keep the walk-in clean, or act as a support person for production, or assist in the stocking and maintaining of supplies, or unload supplies from a transporter. Jude Dep., at 30–31, 68–70. Ms. Swartz hasn't argued or come forward with any evidence to the contrary. The record contains some discrepancies as to the specific tasks Ms. Swartz performed, but nothing in the record could allow a reasonable fact-finder to say she performed the essential elements of her crew position.

Ms. Swartz has not made an affirmative showing that she is able to perform the essential functions of her job with or without reasonable accommodation. Without such a showing, there is "no genuine issue of material fact as to whether the plaintiff is a 'qualified individual' and [McDonald's] is entitled to judgment as a matter of law." *Weigel v. Target Stores,* 122 F.3d 461, 467–468 (7th Cir.1997).

The principles applied in this decision generally dictate that the ADA doesn't obligate an employer to create a new position for a disabled employee. *See, e.g., Dalton v. Subaru–Isuzu Automotive, Inc.,* 141 F.3d 667, 680 (7th Cir.1998); *Sieberns v. Wal–Mart Stores. Inc.,* 125 F.3d 1019, 1023 (7th Cir.1997). That is not, of course, what is at issue here: McDonald's had created a new position for a disabled employee. This case has required the court to decide whether an employer who has created a new position for a disabled employee may then discharge that employee because of her disabilities. McDonald's denies that it did so, but for purposes of the summary judgment motion, the court has assumed that it did just that (Mr. Jude's letter says it did). Today's holding effectively means that an employer can, under some circumstances, discharge a person precisely because of her disabilities.

This is a troubling holding to reach in a case brought under the Americans with Disabilities Act. The Seventh Circuit does not appear to have considered a case precisely like this, but support for today's holding can be found. In *Corder v. Lucent Technologies,* 162 F.3d 924 (7th Cir.1998), an employee was fired for failing to complete an evaluation designed to decide whether the employee could return to work after a depression-related leave of absence that lasted several months. Before deciding whether the employer had improperly refused reasonable accommodation, the court addressed "whether Corder's claim fell within the ambit of the ADA at all," and decided that while the employee "indisputably possessed the necessary skills for her job" (since the employer had insisted on her remaining on leave for some eighteen months), "she nonetheless failed to show that she was 'qualified' for it [and so stood] outside the protective reach of the ADA." *Id.,* at 927–928.

Language from other circuits' cases suggests today's holding is correct, though those cases, too, addressed issues somewhat different from those presented by this summary judgment motion. In *Holbrook v. City of Alpharetta,* 112 F.3d 1522 (11th Cir.1997), a visually impaired police detective, whose duties and assignments had decreased significantly since his eye injury without affecting his job title or pay, claimed the city violated the ADA when it failed to promote him or restore his duties, effectively (he claimed) terminating him. He conceded he could not perform the job's essential functions without assistance, and the courts held that the city's past accommodations did not forbid the city from ceasing the accommodations. 112 F.3d at 1528. In *Walton v. Mental Health Ass'n of Southeastern Pa.,* 168 F.3d 661, 671 (3rd Cir.1999), the employee claimed that her employer violated the ADA when it terminated her due to her disability during her unpaid leave. The courts held (among other things) that since the ADA did not require the city to place the employee on unpaid leave in the first place as a reasonable accommodation, the city was not required to continue that accommodation.

Again, the court recognizes that none of those cases squarely holds what this court must hold to grant McDonald's summary judgment motion. At bottom, however, the Americans with Disabilities Act only affects the employment of a "qualified individual with a disability," and no reasonable trier of fact could find, on this record, that Ms. Swartz was a qualified individual. She could do the job McDonald's had created for her, but could not perform the duties of any other job known to McDonald's. To afford ADA protection to Ms. Swartz would be to enforce a law Congress did not enact.

This is a very sad case. Ms. Swartz's job plainly was very important to her, and she appears to have been performing it, when she could, to McDonald's satisfaction. The summary judgment record leaves the court with a strong suspicion that had Ms. Swartz asked for her job back instead of asking for her profit sharing money, McDonald's would have welcomed her back. For whatever reason, though, that didn't happen. Even when everything in this record is viewed as favorably to Ms. Swartz as it can be viewed, it would not support a finding that McDonald's violated the Americans with Disabilities Act. The court GRANTS the defendant's motion for summary judgment (filed December 6, 1999); DENIES AS MOOT the plaintiff's motion for protective order or alternatively motion in limine (filed December 1, 1999) and the plaintiff's motion to strike documents (filed December 1, 1999); and VACATES any scheduling deadlines previously set herein, including the March 20, 2000 trial date. The clerk shall enter judgment for the defendant.

SO ORDERED.