**Gerald J. FOGLE, Sr., Plaintiff–Appellant,**

v.

**ISPAT INLAND, INCORPORATED, Defendant–Appellee.**

No. 01–2918.

United States Court of Appeals, Seventh Circuit.

Submitted March 19, 2002.*

Decided March 19, 2002.

Before WOOD, Jr. ROVNER, EVANS, Circuit Judges.

**ORDER**

After 25 years' employment with Ispat Inland, Inc., Gerald Fogle lost his steel

---

* After an examination of the briefs and the record, we have concluded that oral argument is unnecessary. Thus, the appeal is submitted on the briefs and the record. *See* Fed. R.App. P. 34(a)(2).

mill job when his poor attendance record, including his repeated failure to give his employers advance notice of unscheduled absences, triggered disciplinary proceedings that led to his eventual discharge. Fogle, a recovering cocaine addict, initiated this lawsuit in February 2000, alleging insofar as relevant here that his termination violated his rights under the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq.* Although Ispat never disputed that Fogle was disabled within the meaning of the ADA, it denied Fogle's allegations of discrimination and moved for summary judgment, which the district court granted. On appeal Fogle contends that the district court erred in finding that he failed to establish a *prima facie* case of discrimination under the ADA. We affirm.

Over a three-year period, Fogle's repeated violations of Ispat's attendance policy led to progressive discipline culminating with his firing in September 1997 for failing to report to work as scheduled. Fogle's union filed a grievance on his behalf to challenge his discharge, and on April 2, 1998, Ispat, the union, and Fogle entered into a "Last Chance Agreement" in which the parties acknowledged that Fogle's discharge had been justified but agreed that Ispat would nevertheless allow Fogle "one final chance to prove that he can become a responsible employee of the company." As part of the agreement Fogle consented to enter a drug treatment program as a precondition of his return to work. The parties also agreed that if during the first two years of Fogle's return to work he should accrue an absenteeism rate of 5% or greater during any rolling 90–day evaluation period, or violate any other provision of Ispat's attendance policy, Ispat could discharge Fogle with cause.

Soon after this reinstatement, Fogle missed work on April 18, 1998, and in the process violated Ispat's policy that employees give timely notice of their absences. Ispat discharged Fogle, explaining that these attendance infractions violated the terms of the Last Chance Agreement. Fogle's union, in response, filed another grievance seeking his reinstatement. The case was ultimately submitted to binding arbitration, and although the arbitrator reinstated Fogle under the terms set forth in the Last Chance Agreement, she refused to award him back pay because of his failure to meet his obligations under Ispat's attendance policies.

Fogle returned to work in September 1998, but by January 1999 had accumulated four unscheduled absences, once due to personal illness and three times because of transportation problems. Ispat fired Fogle not only because his absence rate exceeded 5% over a 90–day period, but also because he failed to call in before missing work. With help from his union Fogle again sought arbitration, but this time the arbitrator found him in violation of the Last Chance Agreement and accordingly upheld his termination.

Fogle then filed a charge with the Equal Employment Opportunity Commission, and later filed his federal complaint alleging that Ispat terminated his employment because of his drug addiction, and that Ispat's stated reason for firing him, his poor attendance, was a lie. A federal magistrate judge, sitting by consent pursuant to 28 U.S.C. § 636(c), granted summary judgment based on Fogle's inability to show that he was meeting Ispat's legitimate work performance expectations, thereby failing to establish a *prima facie* case of disability discrimination. We review the grant of summary judgment *de novo* and view all facts, drawing all reasonable inferences from them, in favor of Fogle. *See Lewis v. Holsum of Fort Wayne, Inc.*, 278 F.3d 706, 709 (7th Cir.2002).

Where, as in this case, there is no direct evidence of disability discrimination, a plaintiff may prove his case indirectly by employing the burden-shifting approach set out in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). *See Leffel v. Valley Fin. Servs.,* 113 F.3d 787, 792 (7th Cir. 1997). Under this method of proof, the plaintiff bears the initial burden of establishing a *prima facie* case of discrimination. *Id.* The burden then shifts to the employer to articulate a legitimate, nondiscriminatory reason for the employment action. *Id.* Finally, the burden shifts back to the plaintiff to prove that the employer's proffered reason was a pretext for discrimination. *Id.*

The ADA prohibits employers from discriminating against "a qualified individual with a disability because of the disability ... in regard to ... [the] terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). Ispat does not dispute that Fogel's cocaine addiction constitutes a disability under the ADA, so we will assume without deciding that Fogle is an "individual with a disability" under the Act, although we have never expressly held so in this circuit. *See Pernice v. City of Chicago,* 237 F.3d 783, 785 n. 1 (7th Cir.2001) ("Whether drug addiction constitutes a 'disability' within the meaning of the ADA is a separate question, which we leave for another day."). Nor does Ispat disagree that Fogle suffered an adverse employment action when it fired him. The question remains, however, whether Fogle can prove that he was a "qualified" individual who was meeting Ispat's legitimate job expectations.

■ We have repeatedly held that an employee who does not come to work cannot perform the essential functions of his job. *See Waggoner v. Olin Corp.,* 169 F.3d 481, 483 (7th Cir.1999); *Nowak v. St. Rita*

*High Sch.,* 142 F.3d 999, 1003 (7th Cir. 1998); *see also Rush v. McDonald's Corp.,* 966 F.2d 1104, 1115 (7th Cir.1992) ("It seems self-evident that an employer is acting with a 'legitimate non-discriminatory reason' in terminating an employee who simply fails to report to work and does not adequately explain his absence."). Ispat argues that Fogle's excessive absenteeism, his failure to give timely notice of his absences, and the arbitrator's finding that Fogle violated the Last Chance Agreement demonstrate that his work performance failed to meet the company's legitimate expectations. We agree, since Fogle has never presented any evidence to demonstrate the existence of a genuine issue of material fact on the subject.

■ Fogle does not dispute that he was absent from work at the times in question, but instead argues that he should be excused from Ispat's attendance policy because of his cocaine addiction. This contention is especially puzzling because, according to Fogle, none of the absences that led to his final discharge were in any way related to his addiction. Fogle conceded that three of his absences were due to transportation problems and the fourth, personal illness. Furthermore, when Fogle signed the Last Chance Agreement he conceded that Ispat was justified in firing him for his attendance violations, although he now claims that each attempt to fire him was discriminatory. But nothing in the ADA prohibits employers from disciplining employees with a history of drug addiction for unsatisfactory job performance. The statute expressly instructs that employers may have "the same qualification standards for employment or job performance and behavior" for all employees "even if any unsatisfactory performance or behavior is related to ... drug use." 42 U.S.C. § 12114(c). And since attendance at the job site is a basic requirement of most jobs, the ADA does not protect individuals who fail to show up for

work, even when their absences are a result of a disability. *See Waggoner*, 169 F.3d at 484.

Fogle's brief also suggests arguments based on federal statutes—such as the Civil Right Act of 1991, Title VII of the Civil Rights Act of 1964, the Employee Retirement Income Securities Act, Section 301 of the Labor Management Relations Act, and the Rehabilitation Act of 1973—as well as common law theories of breach of contract, fraudulent inducement, interference with contractual relationship, and intentional infliction of emotional distress. No such claims were ever raised in the district court and therefore are not properly before us.

AFFIRMED.