# United States Court of Appeals
## For the First Circuit

No. 10-1102

MARITZA VALLE-ARCE,

Plaintiff, Appellant,

v.

PUERTO RICO PORTS AUTHORITY,

Defendant, Appellee.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

[Hon. Francisco A. Besosa, U.S. District Judge]

Before

Lynch, Chief Judge,
Lipez and Howard, Circuit Judges.

José F. Quetglas Jordán for appellant.
José Vázquez García, with whom Maza & Green, PSC was on
brief, for appellee.

July 8, 2011

**LYNCH**, **Chief Judge**.  Plaintiff Maritza Valle-Arce claimed that her employer, the Puerto Rico Ports Authority, violated the Americans with Disabilities Act of 1990 (ADA), 42 U.S.C. § 12101 et seq., when it failed to provide her with reasonable accommodations for her disabilities and retaliated against her, including by terminating her employment, for engaging in protected activities. A jury spent seven days hearing the plaintiff's evidence, including hearing testimony from the plaintiff, a co-worker, and an expert witness, a psychiatrist.  But the jury never had the opportunity to decide Valle's claims.  In a short oral ruling, based on an oral motion, the district court granted the Ports Authority's motion for judgment as a matter of law at the close of Valle's case-in-chief. Valle appeals.  We vacate the judgment of the district court and remand.

## I. Standard of Review

We review the district court's grant of judgment as a matter of law de novo.  Collazo-Santiago v. Toyota Motor Corp., 149 F.3d 23, 27 (1st Cir. 1998).  We view the evidence in the light most favorable to Valle, the non-moving party, drawing all reasonable inferences in her favor, without evaluating witness credibility, conflicting testimony, or the weight of the evidence. Andrade v. Jamestown Hous. Auth., 82 F.3d 1179, 1186 (1st Cir. 1996).  We will affirm the judgment "only if the evidence, viewed from this perspective, 'would not permit a reasonable jury to find

in favor of the plaintiff[] on any permissible claim or theory.'" Id. (quoting Murray v. Ross-Dove Co., 5 F.3d 573, 576 (1st Cir. 1993)) (alteration in original). "A reviewing court must thus ask whether the plaintiff[] ha[s] offered enough evidence to permit findings in [her] favor on each of the elements necessary to prove at least one cause of action." Murray, 5 F.3d at 576.

## II. Background

A reasonable jury could have found the following from the evidence presented during Valle's case-in-chief.

Valle worked at the Puerto Rico Ports Authority from June 1990 until her termination on July 24, 2007. Valle testified that her wages plus fringe benefits during the year before she was terminated amounted to $78,000. Valle was first diagnosed with Chronic Fatigue Syndrome (CFS) in 2000, and first requested workplace accommodations that year.[1] She submitted a report from her physician that described her symptoms as typical of CFS, including insomnia that usually kept her from sleeping more than four hours a night, joint and muscle pain and weakness, and headaches, varying in severity over time. The physician suggested Valle's work schedule be adjusted to begin at 9:00 a.m., instead of the Ports Authority's standard 7:30 a.m. start time to accommodate the difficulty Valle's insomnia caused her in arriving at work on

---

[1] Valle was later also diagnosed with fibromyalgia, which her expert witness, a psychiatrist, testified is a common comorbid disorder with CFS and involves many of the same core symptoms.

-3-

time. The internal evaluation process for Valle's request dead-ended after Valle objected to the specific psychiatrist the Ports Authority had suggested to evaluate her.

From May 1, 2003, to January 19, 2005, Valle occupied trust positions within the agency's Human Resources Department, first as Special Assistant to the Director of the Ports Authority, Miguel Soto Lacourt, and then as Chief of the Human Resources Department (while she also maintained her Special Assistant position). When she first became Soto's assistant in 2003, Soto allowed her to work on a flexible schedule as to her arrival and departure times each day, as long as she completed the requisite 37.5 hours of work per week or accounted for any shortfall with vacation or sick leave. This arrangement, however, was never reduced to writing.

On January 19, 2005, Valle returned to her previous career position, Auxiliary Chief of the Human Resources Department. For the first few months after her return, her new supervisor accepted her flexible schedule.

On May 9, 2005, however, Sara Gregory was named the new Chief of the Human Resources Department, and became Valle's supervisor. Valle testified that Gregory first questioned Valle's flexible schedule two days later, on May 11, and Valle responded by explaining her condition and that the Ports Authority had

documentation of it dating to Valle's 2000 reasonable accommodation request.

Shortly thereafter, Valle testified, Gregory began monitoring Valle's entry and exit times, and, even when Valle had worked 37.5 hours total in a week, Gregory deducted from Valle's leave time any shortfall from 7.5 hours on a given day. Gregory had also sometimes deducted from Valle's accrued leave daily shortfalls that Valle testified she had made up for by working through her lunch hour on the same day. Gregory questioned or harassed Valle about her work schedule "[p]ractically every week," including by asking Valle why she had arrived late on particular days long after Valle had told Gregory about the medical conditions that led to Valle's difficulties arriving at work by 7:30 a.m. Gregory sometimes required Valle to obtain doctors' notes documenting Valle's need for one or two sick days, even though agency policy required such notes only for absences of three days or more. Gregory also sent Valle memoranda reprimanding her for some of her her late arrivals, and stating that insomnia is not a justified reason for absence. Valle testified that during the fifteen years she worked at the Ports Authority before Gregory became her supervisor, she had never once been reprimanded for any reason.

Valle also testified that Gregory had taken away from Valle several individual workspace features that had helped Valle

work around her CFS symptoms. Unlike other employees, Valle had a printer in her office so that she would not have to walk to retrieve printed documents. Gregory had the printer removed from Valle's office on May 14, five days after she became Valle's supervisor. Also unlike other employees, Valle had an air conditioner in her office so that she could control her climate, since temperature sensitivity was another of her CFS symptoms. In June 2005, Gregory made Valle switch offices with her, so that Gregory could better supervise the Human Resources Department staff, according to Gregory. Valle's new office had no air conditioner until December 2005, because Gregory delayed the requisition, insisting that Valle get medical certification of its necessity. The new office was farther from the restroom and photocopier than her previous office was, leading to relatively long walks that exhausted her.

According to Valle's testimony, her relationship with Gregory dramatically worsened over time, and that worsening contributed to a decline in Valle's health. Valle testified that Gregory was skeptical that Valle had a real medical condition and harassed Valle about her attendance and accommodation requests in many ways, including by repeatedly insisting on receiving more documentation of Valle's health conditions, forcing Valle to duplicate the Ports Authority's electronic timekeeping system with manual timekeeping, and sending Valle written reprimands

criticizing her handling of her own workday schedule and workload.

Valle testified that the persistent and increasing stress and anxiety caused by this negative working relationship exacerbated her medical conditions, leading her doctor to prescribe periods of rest, which she took as two periods of extended medical leave from June 24 to July 11 and from October 6 to November 2, 2005. She testified that the stressful work environment persisted: "It's as if there is no way to satisfy [Gregory's] interrogations or her questionings . . . no matter how much one would sit down and talk with her. She would go back to the same theme again. She would bring it up again." Valle wrote to the Director of the Ports Authority more than once describing Gregory's treatment of her, but felt that he was not responsive to her concerns.

Upon her return to work on November 3, 2005, Valle submitted a new formal request for reasonable accommodation and another medical report by her treating physician, hoping that a new report would satisfy Gregory's demands for documentation and lead to formal accommodations. The report, by the same physician as in 2000, stated that Valle had first been diagnosed with CFS in March 2000, and that she also suffered from associated depression and Chronic Mononucleosis. The report described her symptoms, in terms consistent with the 2000 report, and recommended several workplace accommodations, including adjusting Valle's workday to begin flexibly between 8:30 and 9:00 a.m., instead of the Ports

-7-

Authority's usual 7:30 a.m. start time, as an accommodation for her insomnia.[2]

The agency responded by requesting that Valle submit information from her physician explaining how her medical conditions substantially limited her ability to work, which Valle testified was contrary to the Ports Authority's normal procedure of either granting a documented request or sending the employee for an independent examination. Valle, part of whose job as Auxiliary Chief of Human Resources was to manage the reasonable accommodation process for other employees, testified that no other employee had been required to provide the level of documentation she was required to provide before being granted a flexible work schedule. After several letters were exchanged between Valle and a member of the Director's staff related to Valle's insistence that she had provided sufficient documentation, a new Acting Director of the Ports Authority deferred to the staff member's determination that more documentation should be required.

On January 30, 2006, Gregory formally recommended that the Director of the Ports Authority discipline Valle for

---

[2] Other suggested accommodations included shortening Valle's lunch break so that she could use the remainder to rest at another time during the day, allowing her to control her workspace's temperature, providing her with a nearby parking space, shortening the distances she needed to walk during the workday, allowing her rest periods when needed, allowing her to take work home when she was too tired to complete it at work, and providing clear written instructions for assignments.

mishandling the reasonable accommodation request of another employee, Gladys Orengo. Valle was formally reprimanded on March 28 for this incident.

Valle appealed the reprimand, attaching parts of Orengo's file in an effort to show that Gregory herself and another employee, not Valle, had been responsible for Orengo's accommodation request. Valle and Orengo both testified at trial that before she used the documents from Orengo's file for this purpose, she obtained Orengo's oral authorization to do so. Valle also testified that in obtaining this authorization she was following the agency rule for use of employee medical files contained in a November 2005 memo from the agency's legal advisor to Gregory, which Valle produced as an exhibit.

Nearly a year after the reprimand, Valle received a letter dated March 8, 2007 informing her of the agency's intent to dismiss her for using Orengo's confidential information in her internal appeal.

Valle was out on medical leave in 2006 from February 7 to 21 and again from July 7 to October 20. Shortly after her return in October, on October 23, she submitted another formal reasonable accommodation request in which her physician stated that she suffered from fibromyalgia and anxiety in addition to depression

and CFS.[3]  The physician noted that the stress Valle complained of in her work environment had exacerbated her symptoms, including her sleep disorder.  Valle again requested flexibility in her daily start time, this time asking that she be allowed to arrive between 7:30 and 9:30 a.m.  She also asked for flexibility in her schedule to permit her to attend medical appointments, and for the other adjustments she had requested in her 2005 submission.

Valle testified at length about other employees who asked for and were granted flexible schedules, including four in order to accommodate their children's school drop-off and pick-up times. Admittedly, each of their adjusted schedules set a specific entry time, rather than a range of times.  Valle also testified that one employee with a disability was granted a flexible schedule without having to go through the reasonable accommodation procedure, with entry between 9:00 and 9:30 a.m., which Valle viewed as similar to what she had requested.  Valle presented documentation of the approval of each of these requests from other employees.

Five months passed with the agency taking no action on Valle's October 2006 request for reasonable accommodation. Eventually, on March 19, 2007, after she had received the March 8, 2007 letter of intent to terminate, Valle filed charges with the

_____

[3] Both this 2006 request and the 2005 request were addressed directly to the Director of the Ports Authority.  Valle testified that agency policy permitted a reasonable accommodations request to be given in the form of "any verbal or written statement from an employee."

Equal Employment Opportunity Commission (EEOC), alleging discrimination and retaliation by the Ports Authority. The very next day, with no additional medical examination or administrative procedure, the Director of the Ports Authority partly granted her accommodation request, fixing her work schedule from 9:00 a.m. to 5:00 p.m. She was granted her request for a shorter lunch period, accompanied by two fifteen-minute rest breaks during the day, as well as the requests she had made for temperature control and reduced walking distances. She was not granted any of the flexibility she had requested as to a range of entry times or the ability to work fewer hours one day by making the hours up during other days of the same week.

On April 4, Valle received a second letter of intent to terminate, updated to charge Valle with using an agency computer and agency supplies during work hours to write a letter to colleagues who had offered to "donate" to her a day of their accrued vacation to cover a garnishment of Valle's wages to pay a debt she owed to the agency. The letter informed the colleagues that the agency director would not allow the donation to take effect and so no leave had been deducted. Valle testified that she wrote the letter because a colleague asked her whether the leave donation had been completed, though the agency's April 4 letter to Valle said a letter had been sent to the employees just after the decision had been made. Valle testified that other employees had

-11-

used the same leave donation procedure in order to help charity drives for disaster relief and for a colleague whose house had burned down, and that the organizing employees had used Ports Authority computers and time to do so. She also testified that other employees had used agency computers during work time to send emails on personal matters such as a baby shower, an invitation to a political activity, holiday greetings, restaurant menus, religion, jokes, and parties, and she provided copies of such emails as exhibits. On cross-examination, Valle acknowledged that sending physical letters used more agency resources, but she emphasized that she had considered matters relating to her relationship with the agency as agency, not personal, matters.

Three months later, on July 24, 2007, after an informal administrative hearing, Valle was dismissed for using Orengo's personnel file in her 2005 administrative appeal and for using agency resources on what the agency characterized as a personal matter, the rejected leave donation.

At the close of Valle's case-in-chief at trial, in an oral ruling, the district court granted the Ports Authority's Rule 50(a) motion for judgment as a matter of law on all of Valle's claims. The court held that Valle was not a "qualified individual" under the ADA, because work attendance is an "essential function" of any job, see 42 U.S.C. § 12111(8), and so Valle's extensive absences from work prevented her from fulfilling the essential

-12-

functions of her job as required to qualify for protection under the ADA. The court also held that since the accommodation Valle requested was eventually granted, and "[t]here's nothing in the statute that says the accommodation has to be granted . . . within a particular time period," there was no violation of the ADA's reasonable accommodation requirement. Finally, the court also held that as a matter of law Gregory's questioning of Valle's time cards and memoranda to Valle stating agency policy did not constitute "harassment."[4]

### III. Analysis

A.    The ADA Framework

The standards under the ADA are by now familiar. The ADA prohibits discrimination against a "qualified individual" because of the individual's disability, 42 U.S.C. § 12112(a), a prohibition which includes any failure to make "reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability," id. § 12112(b)(5)(A).[5] See also Carroll v. Xerox Corp., 294 F.3d 231, 237 (1st Cir. 2002). To make

---

[4]    The district court also dismissed Valle's retaliation and Law 80 claims with prejudice; her remaining claims under Puerto Rico law were dismissed without prejudice.

[5]    The ADA Amendments Act of 2008, Pub. L. No. 110-325, which broadened the scope and protections of the ADA, does not apply to this case. That act does not apply retroactively to conduct that occurred before its effective date of January 1, 2009, and all of the conduct at issue in this case occurred in 2007 or earlier. See Thornton v. United Parcel Serv., Inc., 587 F.3d 27, 34 n.3 (1st Cir. 2009).

-13-

out a reasonable accommodation claim, Valle must show (1) that she suffers from a disability, as defined by the ADA, (2) that she is an otherwise qualified individual, meaning that she is "nevertheless able to perform the essential functions of [her] job, either with or without reasonable accommodation," and (3) that the Ports Authority knew of her disability and did not reasonably accommodate it.[6] Carroll, 294 F.3d at 237; see also 42 U.S.C. § 12111(8) (defining "qualified individual"); Lessard v. Osram Sylvania, Inc., 175 F.3d 193, 197 (1st Cir. 1999) (describing "qualified").

On appeal, the Ports Authority does not dispute that a reasonable jury could conclude that Valle suffers from a disability, but argues vigorously that no reasonable jury could, on Valle's evidence, have found that Valle was a qualified individual or that she was denied reasonable accommodation.[7]

---

[6] Because Valle must affirmatively prove as an element of her prima facie case that she is an "otherwise qualified individual," 42 U.S.C. § 12112(b)(5)(A), it was not error for the district court to consider whether she had met that burden in its evaluation of the defendant's motion for judgment as a matter of law. We reject Valle's arguments that the Ports Authority waived any objection to her status as a qualified individual by not specifically raising it as an issue prior to its Rule 50(a) motion, and that the issue consequently could not be addressed by the district court.

[7] Ordinarily, once the plaintiff establishes the elements of her reasonable accommodation claim, "the defendant then has the opportunity to show that the proposed accommodation would impose an undue hardship." Freadman v. Metro. Prop. & Cas. Ins. Co., 484 F.3d 91, 103 (1st Cir. 2007). Because judgment was granted as a matter of law based only on Valle's case-in-chief, there is no

-14-

The ADA also prohibits retaliation against "any individual because such individual has opposed any act or practice made unlawful" by the ADA. 42 U.S.C. § 12203(a). "Requesting an accommodation is protected conduct for purposes of the ADA's retaliation provision," Freadman, 484 F.3d at 106, as, of course, is complaining of discrimination on the basis of disability.

A plaintiff's retaliation claim may succeed even where her disability claim fails. Id. "To establish a claim of retaliation, a plaintiff must show that (1) she engaged in protected conduct, (2) she suffered an adverse employment action, and (3) there was a causal connection between the protected conduct and the adverse employment action." Id. While termination of employment obviously is an adverse employment action, an environment of hostility and harassment may also suffice if it "well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. 53, 68 (2006) (quoting Rochon v. Gonzales, 438 F.3d 1211, 1219 (D.C. Cir. 2006)); see also Billings v. Town of Grafton, 515 F.3d 39, 54 n.13 (1st Cir. 2008) ("Of course, retaliatory actions that are not materially adverse when

evidence or argument on whether the Ports Authority was entitled to deny Valle's requests for accommodation because of undue hardship.
      We note that the Ports Authority put on two witnesses on the sixth day of trial, before the plaintiff finished presenting her case on the seventh day. The parties and the district court nonetheless clearly treated the Rule 50(a) motion as taking into account only the plaintiff's evidence.

-15-

considered individually may collectively amount to a retaliatory hostile work environment."). And very close temporal proximity between the protected action by the employee and the adverse employment action by the employer may give rise to an inference of causation. Calero-Cerezo v. U.S. Dep't of Justice, 355 F.3d 6, 25 (1st Cir. 2004).

B.        Evaluating Valle's ADA Claims

On appeal, Valle argues that the district court erred in holding as a matter of law that she had not met her burden of proving that she was qualified to perform her essential job functions with or without reasonable accommodation. Valle also argues that the district court erred in concluding that (1) the agency had granted her reasonable accommodations, (2) Gregory's treatment of Valle did not constitute "harassment," in the district court's usage, (3) there was no retaliation, and (4) Valle failed to present evidence as to her salary as required to support her Law 80 claims.

We agree with Valle that the district court erred in granting judgment as a matter of law to the Ports Authority at the close of Valle's case-in-chief. It was not the role of the district court to "consider the credibility of witnesses, resolve conflicts in testimony, or evaluate the weight of the evidence." Andrade, 82 F.3d at 1186 (quoting Wagenmann v. Adams, 829 F.2d 196, 200 (1st Cir. 1987)) (internal quotation mark omitted). Valle

presented evidence that would allow a reasonable jury to find each element of her claims in her favor, and so she was entitled to submit her case to the jury. We do not engage in a long discussion of the evidence, in light of the district court's bare-bones ruling, but we briefly address each of Valle's claims of error in turn. We do not suggest that a jury could not reach the same conclusion on the evidence that the district court did. We hold only that the decision belonged to the jury, not the judge.[8]

We examine the second element Valle must show to prove her reasonable accommodations case: that despite her disability she "was nevertheless able to perform the essential functions of [her] job, either with or without reasonable accommodation." Tobin, 433 F.3d at 104. The district court held that Valle "is not a

---

[8] "[I]n most cases a trial court will be better advised to reserve decision on such a motion, passing on the legal question only after submitting the case to the jury. Mid-trial directed verdicts should be the exception, not the rule. We concluded long ago that refraining from granting a judgment as a matter of law until the jury has had a chance to deal with the merits is frequently a 'wise and time-saving precaution.' By following that course, the judge minimizes the risk that the trial will have to be replayed yet retains the power to pass on the sufficiency of the evidence in a timely manner." Gibson v. City of Cranston, 37 F.3d 731, 735 n.4 (1st Cir. 1994) (quoting Talbot-Windsor Corp. v. Miller, 309 F.2d 68, 69 (1st Cir. 1962)). "[I]f the jury had been permitted to consider [Valle's] claim[s] against [the Ports Authority], found for [Valle], and the district court then entered a judgment notwithstanding the verdict, we would have the option of reinstating the jury's verdict. McLane, Graf, Raulerson & Middleton, P.A. v. Rechberger, 280 F.3d 26, 40 (1st Cir. 2002). "Under the present circumstances, we must vacate the court's judgment as a matter of law for [the Ports Authority] at trial, and remand for a possible retrial of [the case]. . . . [W]e do not relish that prospect." Id.

-17-

qualified individual" under the ADA because she "was absent six months in a 16-month period from June, 2005, to October, 2006" and "[a]n employee who does not come to work cannot perform any function[,] not just the essential functions of her job."  The district court relied on our opinion in Rios-Jimenez v. Principi, 520 F.3d 31 (1st Cir. 2008), for support.

In Rios-Jimenez, we held that, "[a]t the risk of stating the obvious, attendance is an essential function of any job."  Id. at 42; see also Waggoner v. Olin Corp., 169 F.3d 481, 485 (7th Cir. 1999) ("[A]n employee who does not come to work cannot perform the essential functions of his job.") (quoting Nowak v. St. Rita High Sch., 142 F.3d 999, 1003 (7th Cir. 1998)) (internal quotation marks omitted).  This is a true statement of law.  But it is not dispositive here, where the district court failed to consider the evidence Valle had presented that the flexible work schedule she had requested as an accommodation would have enabled her to fulfill this essential function of attendance.

Valle testified that she had never been reprimanded in relation to her attendance during the period from 2003-2005 in which her supervisors had informally granted her a flexible schedule.  She also testified that the stress of Gregory's repeated haranguing about Valle's attendance contributed to Valle's acute need to take extended medical leave, which in turn resulted in the long absences on which the district court based its ruling.

-18-

Significantly, there was expert testimony to support this contention. Valle's expert witness, a psychiatrist, testified similarly, and also testified that it caused Valle a great deal of stress to go to work realizing that she was going to be late, which led to many of her absences. A reasonable jury crediting this testimony could conclude that Valle had produced sufficient evidence that she was able to attend work regularly when granted the reasonable accommodation of a flexible schedule.

The Ports Authority claims that, starting in August 2005, Gregory informally allowed Valle to enter work as late as 8:30 a.m., and that this accommodation continued until Valle's request was formally granted in March 2007, in the form of a 9:00 a.m. start time. This, the Ports Authority argues, means that there was never a time during which Valle was not accommodated, rendering her reasonable accommodations claim moot. However, whether there was any such informal arrangement between Gregory and Valle is a disputed question of fact for the jury, as Valle denied any such informal arrangement on cross-examination. Further, the letter from Gregory to Valle memorializing the purported arrangement was dated April 5, 2007, after the agency had begun efforts to terminate Valle, after Valle filed an administrative complaint against the agency, and seventeen months after Valle's first formal accommodations request.

The district court also concluded that Valle had failed to prove that the Ports Authority knew of her disability and did not reasonably accommodate it. See Carroll, 294 F.3d at 237. The district court reasoned, without reference to any of the evidence Valle had presented, that because the Ports Authority eventually granted Valle a flexible schedule, and because the ADA does not specify a time period within which employers must grant accommodations, the Ports Authority had not denied Valle reasonable accommodations.

As Valle argues, unreasonable delay may amount to a failure to provide reasonable accommodations. See, e.g., Astralis Condo. Ass'n v. Sec'y, U.S. Dep't of Hous. & Urban Dev., 620 F.3d 62, 68-69 (1st Cir. 2010) (holding on petition for review of agency enforcement order for discrimination on the basis of disability that condominium association's delay of more than a year in deciding on request for designated handicapped parking spaces constituted a denial of accommodation request); Calero-Cerezo, 355 F.3d at 25 ("[A] factfinder might well conclude that . . . the defendants simply stonewalled--going so far as to deny, in the face of substantial medical evidence, that plaintiff suffered a disability at all."). So too may an employer's "failure to engage in an informal interactive process" following an employee's request. Soto-Ocasio v. Fed. Express Corp., 150 F.3d 14, 19 (1st Cir. 1998) (quoting Jacques v. Clean-Up Grp., Inc., 96 F.3d 506,

515 (1st Cir. 1996)); see also 29 C.F.R. § 1630.2(o)(3) (ADA interpretive regulations).  Here, where Valle testified to ways in which the Ports Authority did not follow its normal reasonable accommodations procedure in her case, where the agency delayed months after even the 2006 request, and where the rigid 9:00 a.m. to 5:00 p.m. schedule eventually granted was not what she sought and arguably did not reasonably accommodate Valle's condition, Valle was entitled to present to a jury the question of whether the agency failed to grant her a reasonable accommodation.[9]

The district court entered judgment dismissing Valle's retaliation claim as well.  There were no written motions or memoranda on the Ports Authority's oral motion for judgment as a matter of law, only oral argument on the morning of the eighth day of the jury trial, which reveals little discussion about the retaliation claim and its relation to Valle's substantive discrimination claim.  The district court's two-page oral ruling on the defendant's oral motion merely stated that the retaliation claim was dismissed, without explaining the grounds on which the Ports Authority was entitled to judgment on it as a matter of law.

The events of harassment to which Valle testified could be considered by a reasonable jury to be either discrimination on

---

[9] Because of the procedural posture of the case, we do not have before us any evidence from the Ports Authority as to whether the accommodations Valle requested would create an undue burden on the agency, and so we do not opine on this issue.

-21-

the basis of Valle's disability or retaliation for her reasonable accommodations requests.  A jury could at least, on the record so far, conclude that the termination of Valle's employment was an act of retaliation.  A jury crediting Valle's evidence that she was singled out for punishment despite other employees' use of agency resources for personal matters, and her evidence that she did not violate any agency policy in her handling of the files from Gladys Orengo's reasonable accommodation case, could reasonably find that the reasons the Ports Authority gave for firing Valle were retaliation against Valle for pursuing her reasonable accommodations requests.  The timing of the events also supports such an inference.[10]  The district court erred in granting judgment as a matter of law on the retaliation claim.

---

[10]    Valle testified that Gregory began to treat her poorly almost immediately upon becoming Valle's supervisor and learning about her previous informal accommodations, including by removing her printer, changing her office, and beginning to scrutinize her entry times.  There are also close temporal associations between Valle's renewed efforts to resolve her pending 2006 reasonable accommodations request and the agency's efforts to terminate her. On January 27, 2006, Valle wrote to the Executive Director of the Ports Authority alleging that the Assistant Executive Director, Ivonne Laborde, was unreasonably delaying the agency's consideration of Valle's request by questioning her physician's competence.  Three days later, Gregory and Laborde together wrote a letter to the Director blaming Valle, allegedly falsely, for the mishandling of Orengo's reasonable accommodation file, the matter which led to the initial intent-to-dismiss letter.  And the amended intent-to-dismiss letter, adding the charges about personal use of agency resources that Valle argues unfairly singled her out for conduct common among Ports Authority employees, was issued on April 4, 2007, sixteen days after Valle filed charges against the agency with the EEOC.

Finally, we also vacate and remand the district court's judgment on Valle's Law 80 claim. Law 80, a remedial measure in Puerto Rico law that mandates severance pay for terminated employees under certain circumstances, bases the amount an entitled employee receives on that employee's pre-termination compensation. See Otero-Burgos v. Inter Am. Univ., 558 F.3d 1, 7-9 (1st Cir. 2009) (discussing Law 80's history and purpose). The district court held, without any discussion, that "there was no evidence as to the amount of the Law 80 claim," even though Valle had testified that her compensation for Law 80 purposes was "close to $78,000." Valle argues this was sufficient evidence, while the Ports Authority argues that damages under Law 80 must be proven with a certain level of specificity that Valle's testimony does not satisfy. Neither side cites any authority for its position. Absent any helpful briefing on the facts or the law, we decline to decide the issue on this record and vacate the entry of judgment on the Law 80 claim for further proceedings along with Valle's other claims.

The order of the district court granting judgment as a matter of law to the Ports Authority is vacated in its entirety and the case is remanded for further proceedings consistent with this opinion. Costs are awarded to Valle pursuant to Fed. R. App. P. 39(a)(4).