Wanda MALDONADO–GONZALEZ,
Plaintiff,

v.

Commonwealth of PUERTO RICO
POLICE, et al., Defendants.

Civil No. 12–1088 (DRD).

United States District Court,
D. Puerto Rico.

March 5, 2013.

Luisselle Quinones–Maldonado, Guivas & Quinones Law Office, Aguada, PR, for Plaintiff.

Lumy Mangual–Mangual, P.R. Department of Justice, San Juan, PR, for Defendants.

**OPINION AND ORDER**

DANIEL R. DOMÍNGUEZ, District Judge.

## I. PROCEDURAL HISTORY

Wanda Maldonado–Gonzalez ("Plaintiff") brings the instant sex discrimination suit against her former employer, the Commonwealth of Puerto Rico Police Department ("PRPD"); the PRPD Superintendent, Emilio Diaz–Colon ("Diaz–Colon"); the former PRPD Superintendent, Jose Figueroa–Sancha ("Figueroa–Sancha");

the Director of the Criminal Investigation Division, Ricardo Nazario–Acosta ("Nazario–Acosta"); the Director of the Special Arrests Unit, Hector Millan–Santiago ("Millan–Santiago"); Director of the Special Arrests Unit—Ponce Region, Ivan Vega–De Jesus ("Vega–De Jesus"); and co-worker David Manzur–Ramos ("Manzur–Ramos"); and various John Doe's and unknown insurance companies (collectively "Defendants"). Plaintiff brings these claims pursuant to the Fifth, Ninth, Tenth and Fourteenth Amendments to the U.S. Constitution, Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq., 42 U.S.C. §§ 1983 and 1988, The Constitution of the Commonwealth of Puerto Rico, Puerto Rico Law No. 100 of June 30, 1959, P.R. LAWS ANN. tit. 29, § 146, et seq. ("Law 100"); Law No. 69 of July 6, 1985, P.R. LAWS ANN. tit. 29, § 1321 et seq. ("Law 69"); and Article 1802 of the Civil Code of Puerto Rico ("Article 1802"), P.R. LAWS ANN. tit. 31 § 5141.

Currently before the Court is Defendants' motion to dismiss (Docket No. 16) which asserts a variety of defenses to Plaintiff's claims, including failure to state a claim upon which relief can be grated, Eleventh Amendment immunity, and statute of limitations. For the reasons set forth below, Defendants' motion to dismiss (Docket No. 16) is hereby **GRANTED IN PART** and **DENIED IN PART**. The surviving claims are Plaintiff's Title VII sex discrimination and retaliation claims against PRPD, as well as the Article 1802 claim against PRPD. The Court **DISMISSES** the remaining claims.

## II. FACTUAL HISTORY [1]

Plaintiff has worked for PRPD since May 21, 2004. In 2007, she took a position as an investigative agent for the Illegal Firearms Division. In December of 2007, Plaintiff was assigned to be an investigator for the Special Arrests Unit of the Criminal Investigation Division in Ponce, Puerto Rico. Of the ten officers assigned to the unit, Plaintiff was the only female. The Director of the Special Arrests Unit was Millan–Santiago while, the Director of the Criminal Investigation Unit of the Ponce region was supervised by Nazario–Acosta. At the time, Figueroa–Sancha was the Police Superintendent.

Plaintiff claims she was discriminated against by Defendants on the first day she began to work for the Special Arrests Unit. Plaintiff was ordered not to drive the patrol car. She was told that no woman assigned to the Special Arrests Unit had ever driven the car because it looked bad to have a woman drive a man around. She also claims to have been forced to give up her assigned arrests to other male officers. Any arrest she did make, was questioned, while arrests made by the male officers were not questioned. Millan–Santiago told Plaintiff that she had to lower the intensity of her work because the other officers may become jealous and may conspire to have her taken out of the unit. At one point, Plaintiff was injured while making an arrest. Millan–Santiago told her that she had specific functions and that it was the duty of the male officers to make such arrests.

After making an honest mistake, Plaintiff was chastised by Millan–Santiago in front of the other officers. Plaintiff believes the purpose of this was to humiliate her because Millan–Santiago called her stupid and stated the Master's degree she earned was worthless. This became a theme the other officers picked up and repeatedly told Plaintiff her degree was worthless because it was obtained through a computer course. Plaintiff received her

1. The factual history is drawn exclusively from Plaintiff's complaint (Docket No. 1).

Master's degree from Pontifical Catholic University.

Millan–Santiago told Plaintiff she had no voice in the unit and once ordered her to leave her keys to her locker or else he would break through the lock. After she gave co-worker Carlos Colon a napkin, he responded by telling her she was still a part of the unit because she was useful for some things. She was also told by him that he would exchange Plaintiff for various women that walked by.

A complaint was filed against Plaintiff by Erwin Leon–Torres ("Leon Torres"), supposedly due to her making an arrest that Leon–Torres believed either he or another male officer should have made instead of Plaintiff.

Plaintiff decided to file an administrative complaint with the PRPD against Millan–Santiago, Carlos Colon and Leon–Torres on February 23, 2009. PRPD initiated the investigation into her complaint on July 9, 2009, roughly five months after Plaintiff made her initial administrative complaint, while officers were not questioned until September.

Immediately after Plaintiff filed her administrative complaint, her work environment became hostile and her activities at work began to be questioned more often. For example, when she made an arrest, the male officers would complain. Officers began to make frivolous written complaints to Plaintiff's supervisor. Plaintiff was never notified the complaints were registered against her or were put in her personnel file.

At some point, and without Plaintiff's knowledge, Millan–Santiago held a number of meetings with male officers to discuss Plaintiff's performance and situation. Notes of these meetings were attached to Plaintiff's personnel file. Plaintiff claims none of the male officers were treated in this manner and she never participated in any unit meetings regarding any male members' performance. Eventually, the male officers, including Plaintiff's supervisors, requested Plaintiff's transfer out of the unit. Plaintiff met with Figueroa–Sancha, the Superintendent of Police, to inform him of all these issues, but nothing was done to remedy the situation.

On October 27, 2009, a written recommendation was issued regarding Plaintiff's administrative complaints. The recommendations, written by three individuals employed by PRPD, found that Plaintiff was suffering from sex-based discrimination. It was recommended that Millan–Santiago, Carlos Colon, and Leon–Torres all serve a thirty-day suspension due to their involvement. According to Plaintiff, no action has ever been taken pursuant to this recommendation.

In December of 2009, Manzur–Ramso was assigned to the Special Arrests Unit. He worked only three shifts with Plaintiff, but filed a sexual harassment claim against her. Plaintiff believes this was in retaliation for her administrative filing and part of Millan–Santiago's plan to get Plaintiff kicked out of the unit. Allegedly, the scheme worked, as Plaintiff was transferred to the Stolen Property Division in Juana Diaz by Nazario–Acosta. Plaintiff alleges all Defendants had knowledge of this plot and actively participated in its implementation. After the transfer took place, Plaintiff was informed of the sexual harassment complaint lodged against her. The complaint alleged Plaintiff looked at Manzur–Ramos with "lusty glances," discussed "intimate relations with him," and that she was "touching her breasts in front of him."

In response, PRPD asked Plaintiff to take a polygraph test to ascertain the truth regarding Manzur–Ramos' allegations. On May 22, 2010, Plaintiff submit-

ted to a polygraph test and PRPD's expert reported that Plaintiff answered the questions truthfully.

A hearing was held regarding these allegations on May 7, 2010. It was determined by a three-member panel that Manzur–Ramos' complaint had no merit and recommended its dismissal. However, at the present time, there has been no resolution to the issue and PRPD has not dismissed the complaint. A copy of said complaint still accompanies Plaintiff's personnel file. Due to the complaint, Plaintiff remains in her post at Juana Diaz. As such, Plaintiff asserts she continues to suffer from sex-based discrimination. Plaintiff filed the instant complaint on February 9, 2012.

### III. MOTION TO DISMISS

Federal Rule of Civil Procedure 8(a) requires plaintiffs to provide "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R.Civ.P. 8(a)(2). Under *Bell Atlantic v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007), a plaintiff must "provide the grounds of his entitlement [with] more than labels and conclusions." *See Ocasio–Hernandez v. Fortuño–Burset*, 640 F.3d 1, 12 (1st Cir.2011) ("in order to 'show' an entitlement to relief a complaint must contain enough factual material 'to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact).' ")(quoting *Twombly*, 550 U.S. at 555, 127 S.Ct. 1955) (citation omitted). Thus, a plaintiff must, and is now required to, present allegations that "nudge [his] claims across the line from conceivable to plausible" in order to comply with the requirements of Rule 8(a). *Id.* at 570, 127 S.Ct. 1955; *see e.g. Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009).

■ When considering a motion to dismiss, the Court's inquiry occurs in a two-step process under the current context-based "plausibility" standard established by *Twombly*, 550 U.S. 544, 127 S.Ct. 1955, and *Iqbal*, 129 S.Ct. 1937. "Context based" means that a Plaintiff must allege sufficient facts that comply with the basic elements of the cause of action. *See Iqbal*, 129 S.Ct. at 1949–1950 (concluding that plaintiff's complaint was factually insufficient to substantiate the required elements of a *Bivens* claim, leaving the complaint with only conclusory statements). First, the Court must "accept as true all of the allegations contained in a complaint[,]" discarding legal conclusions, conclusory statements and factually threadbare recitals of the elements of a cause of action. *Iqbal*, 129 S.Ct. at 1940. "Yet we need not accept as true legal conclusions from the complaint or 'naked assertion[s]' devoid of 'further factual enhancement.' " *Maldonado v. Fontanes*, 568 F.3d 263, 268 (1st Cir.2009) (quoting *Iqbal*, 129 S.Ct. at 1949) (quoting *Twombly*, 550 U.S. at 557, 127 S.Ct. 1955).

■ Under the second step of the inquiry, the Court must determine whether, based upon all assertions that were not discarded under the first step of the inquiry, the complaint "states a plausible claim for relief." *Iqbal*, 129 S.Ct. at 1950. This second step is "context-specific" and requires that the Court draw from its own "judicial experience and common sense" to decide whether a plaintiff has stated a claim upon which relief may be granted, or, conversely, whether dismissal under Rule 12(b)(6) is appropriate. *Id.*

■ Thus, "[i]n order to survive a motion to dismiss, [a] plaintiff must allege sufficient facts to show that he has a plausible entitlement to relief." *Sanchez v. Pereira–Castillo*, 590 F.3d 31, 41 (1st Cir.

2009). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]' 'that the pleader is entitled to relief.'" *Iqbal*, 129 S.Ct. at 1950(quoting Fed. R.Civ.P. 8(a)(2)). Furthermore, such inferences must be at least as plausible as any "obvious alternative explanation." *Id.* at 1950–51 (citing *Twombly*, 550 U.S. at 567, 127 S.Ct. 1955). "A plaintiff is not entitled to 'proceed perforce' by virtue of allegations that merely parrot the elements of the cause of action." *Ocasio–Hernandez*, 640 F.3d at 12, (citing *Iqbal*, 129 S.Ct. at 1950).

The First Circuit has cautioned against equating plausibility with an analysis of the likely success on the merits, affirming that the plausibility standard assumes "pleaded facts to be true and read in a plaintiff's favor" "even if seemingly incredible." *Sepúlveda–Villarini v. Dep't of Educ. of P.R.*, 628 F.3d 25, 30 (1st Cir. 2010) (citing *Twombly*, 550 U.S. at 556, 127 S.Ct. 1955); *Ocasio–Hernandez*, 640 F.3d at 12 (citing *Iqbal*, 129 S.Ct. at 1950); *see Twombly*, 550 U.S. at 556, 127 S.Ct. 1955 ("[A] well-pleaded complaint may proceed even if it appears that a recovery is very remote and unlikely.") (internal quotation marks omitted); *see Ocasio–Hernandez*, 640 F.3d at 12 (citing *Twombly*, 550 U.S. at 556, 127 S.Ct. 1955)("[T]he court may not disregard properly pled factual allegations, 'even if it strikes a savvy judge that actual proof of those facts is improbable.'"). Instead, the First Circuit has emphasized that "[t]he make-or-break standard ... is that the combined allegations, taken as true, must state a plausible, [but] not a merely conceivable, case for relief." *Sepúlveda–Villarini*, 628 F.3d at 29.

However, a complaint that rests on "bald assertions, unsupportable conclusions, periphrastic circumlocutions, and the like" will likely not survive a motion to dismiss. *Aulson v. Blanchard*, 83 F.3d 1, 3 (1st Cir.1996); *Sánchez v. United States*, 671 F.3d 86, 92 (1st Cir.2012) ("we must credit the plaintiff's well-pled factual allegations and draw all reasonable inferences in the plaintiff's favor.") (internal quotations omitted).[2] Similarly, unadorned factual assertions as to the elements of the cause of action are inadequate as well. *Penalbert–Rosa v. Fortuno–Burset*, 631 F.3d 592 (1st Cir.2011). "Specific information, even if not in the form of admissible evidence, would likely be enough at [the motion to dismiss] stage; pure speculation is not." *Id.* at 596; *see Iqbal*, 129 S.Ct. at 1951 ("To be clear, we do not reject [ ] bald allegations on the ground that they are unrealistic or nonsensical.... It is the conclusory nature of [the] allegations, rather than their extravagantly fanciful nature, that disentitles them to the presumption of truth."); *see Mendez Internet Mgmt. Servs. v. Banco Santander de P.R.*, 621 F.3d 10, 14 (1st Cir.2010) (The *Twombly* and *Iqbal* standards require District Courts to "screen[ ] out rhetoric masquerading as litigation.").

## IV. ANALYSIS

### A. Plaintiff's Title VII Claims

Plaintiff brings her Title VII claims against Defendants for discriminating against her because of her sex and for retaliation. The court shall determine Defendants' liability under Title VII individually, as the law distinguishes between employers and coworkers.

**2.** Although the First Circuit was analyzing a Rule 12(b)(1) motion in *Sánchez* and the present inquiry is under Rule 12(b)(6), "[t]he same standard applies to both subsections." *Roman–Oliveras v. Puerto Rico Elec. Power Auth.*, 655 F.3d 43, 45 n. 3 (1st Cir.2011).

### 1. PRPD's Title VII Liability Based on Sex

 Title VII prohibits an employer from discriminating against an employee "because of such individual's race, color, religion, sex, or national origin...." *See* 42 U.S.C. § 2000e–2(a). Firstly, Plaintiff must allege that she was harassed while she was at work. Secondly, Plaintiff must allege sufficient facts to allow the court to infer that such harassment was due to Plaintiff's sex, *as opposed to a trait not-protected by Title VII. See Higgins v. New Balance Athletic Shoe, Inc.,* 194 F.3d 252, 258 (1st Cir.1999). "In other words, '[t]he critical issue [in Title VII cases] is whether members of one sex are exposed to disadvantageous terms or conditions of employment to which members of the other sex are not exposed.'" *Ayala–Sepulveda v. Municipality of San German,* 661 F.Supp.2d 130, 136 (D.P.R.2009) (quoting *Oncale v. Sundowner Offshore Servs.,* 523 U.S. 75, 80, 118 S.Ct. 998, 140 L.Ed.2d 201 (1998)). In the instant case, Plaintiff must allege sufficient facts, that if proven true, would demonstrate she was discriminated against because of her sex.

 The Court finds that Plaintiff has alleged sufficient facts to bring a Title VII claim against PRPD. Plaintiff points to numerous instances in which her job duties were limited or taken away due to her sex. Plaintiff claims she was not allowed to drive the patrol car because she was a woman. Plaintiff claims she was not allowed to make arrests because she was a woman. Comments were made implying that Plaintiff was useful for passing napkins, but not at performing her job duties. Plaintiff also asserts the scrutiny given to her work far surpassed the scrutiny, if any, given to her male co-workers' performances. While Plaintiff was the only female within the Special Arrests Unit, Plaintiff alleges she was treated vastly different and inferior than her male co-workers. Therefore, the Court finds Plaintiff has sufficiently alleged a Title VII violation against PRPD.

### 2. PRPD's Title VII Liability Based on Retaliation

 Plaintiff also raises Title VII's protection from being retaliated against for opposing an unlawful employment practice. (*See* Docket No. 1 ¶¶ 53–55.) In order to make out a prima facie retaliation claim under Title VII, Plaintiff must allege: (1) she engaged in protected conduct; (2) she suffered an adverse employment action, and; (3) there is a causal link between the two. *See Noviello v. City of Boston,* 398 F.3d 76, 88 (1st Cir.2005). An adverse employment action is not confined to termination, it also encompasses hostile work environment claims. *See White v. DaVita, Inc.,* Civ. No. 12–10964–DJC, 2013 WL 65409, at. *9 (D.Mass. Jan. 3, 2013) (citing *Noviello,* 398 F.3d at 89–91).

 Defendants do not argue that Plaintiff has failed to state a claim upon which relief can be granted regarding her retaliation claim. Therefore, the Court quickly address the claim and finds Plaintiff has plead sufficient facts to sustain this claim. Plaintiff alleges she filed an administrative claim with PRPD regarding the alleged sex discrimination she was suffering. Administrative filings are sufficient to meet the first prong of the prima facie case for retaliation. *See Gerald v. Univ. of Puerto Rico,* 707 F.3d 7, 23–24 (1st Cir. 2013). Plaintiff claims it was in retaliation for this filing that Defendants fabricated and filed a sex discrimination case against her. She also alleges she suffered from a hostile work environment due to her administrative filing. But, it is Plaintiff's transfer out of the Special Arrests Unit that is the most obvious adverse employment action. A transfer that significantly

changes the job duties of the employee constitutes an adverse employment action. *See Cham v. Station Operators, Inc.*, 685 F.3d 87, 93 (1st Cir.2012). Finally, Plaintiff claims the work environment became hostile and the fabricated sex discrimination complaint against her was filed right after Plaintiff filed her gender discrimination complaint. (*See* Docket No. 1 ¶ 30.) The timing of these events alone may be sufficient for Plaintiff to demonstrate her retaliation claim, but for now, her allegations of the timing as well as the conduct of Defendants is sufficient to allege causality between her protected conduct and the adverse actions taken against her. *See Valle–Arce v. Puerto Rico Ports Auth.*, 651 F.3d 190, 198–99 (1st Cir.2011). The court finds Plaintiff has successfully plead a claim for retaliation under Title VII.

### 3. Individual Defendants' Title VII Liability

In the complaint, Plaintiff asserts both PRPD and Diaz–Colon committed Title VII violations. (Docket No. 1 ¶¶ 7–8.) However, Defendants, in their motion to dismiss, seek dismissal of Plaintiff's Title VII claims against each individual defendant, not just Diaz–Colon. (Docket No. 16 at 5.) In support, Defendants state Title VII does not provide for individual liability, rather, Title VII only provides for liability by the employer. In her response (Docket No. 24 at 5–6), Plaintiff clarified that the complaint only alleged Title VII liability against PRPD, and was not intended to claim Title VII violations for Diaz–Colon or the other individual defendants. (*See id.* at 6.)

■ Regardless of the confusion surrounding the claim, the Court agrees with the parties and notes that within this circuit, it is well-settled that Title VII does not apply to defendants in their individual capacity. *See Fantini v. Salem State Coll.*, 557 F.3d 22, 30 (1st Cir.2009). Therefore, the Court **GRANTS** Defendants' motion to dismiss as to Plaintiff's Title VII cause of action against Diaz–Colon. The only Title VII claim remaining is Plaintiff's claim against PRPD.

### 4. Eleventh Amendment Sovereign Immunity

■ Defendants claim PRPD cannot be sued under Title VII due to sovereign immunity. (*See* Docket No. 16 at 12–14.) Plaintiff on the other hand, points to *Fitzpatrick v. Bitzer*, 427 U.S. 445, 456, 96 S.Ct. 2666, 49 L.Ed.2d 614 (1976), to stand for the fact that Congress abrogated the states' sovereign immunity through enacting Title VII. Much has previously been written on this point and when faced with the issue in the past, this Court has consistently interpreted governing Supreme Court precedent to allow plaintiff's to sue state governments in federal court under Title VII. *See e.g., Rey–Cruz v. Forensic Sci. Inst.*, 794 F.Supp.2d 329, 336 (D.P.R. 2011). As recently as 2003, the Supreme Court affirmed its position regarding Title VII's abrogation of state sovereign immunity. *See Nevada Dept. of Human Res. v. Hibbs*, 538 U.S. 721, 730–31, 123 S.Ct. 1972, 155 L.Ed.2d 953 (2003) (citing *Fitzpatrick*, 427 U.S. 445, 96 S.Ct. 2666).

At this point, it is clear Title VII abrogated state's sovereign immunity. In circumstances such as the present, when Plaintiff files a Title VII action against PRPD, an instrumentality of the state, sovereign immunity shall not bar the action. Therefore, the court **DENIES** Defendants' motion to dismiss as to Plaintiff's Title VII claim against PRPD.

### B. Statute of Limitations

■ Before analyzing Plaintiff's Sec-

tion 1983 [3] and local law claims, the court must determine whether the court has jurisdiction to hear them. Section 1983 does not contain a statute of limitations period, therefore, a federal court must borrow the forum jurisdiction's limitation period. *See Nieves v. McSweeney*, 241 F.3d 46, 51 (1st Cir.2001). In the case of Puerto Rico, the pertinent period is one year. *See Moran Vega v. Cruz Burgos*, 537 F.3d 14, 21 (1st Cir.2008). Plaintiff's local law claims, Article 1802, Law 69 and Law 100, are also governed by a one-year limitations period. *See Rodriguez v. Suzuki Motor Corp.*, 570 F.3d 402, 406 (1st Cir.2009) (holding one-year statute of limitations period applies to Article 1802 claims); *Rodriguez–Torres v. Caribbean Forms Mfr., Inc.*, 399 F.3d 52, 60 (1st Cir.2005) (holding Law 100's one-year limitation period applies to Law 69). Therefore, Plaintiff's Section 1983 claim and her local law claims are all governed by a one-year limitations period.

■■■■■ Additionally, the court borrows the tolling principles associated with the limitations period from local law. *See Moran Vega*, 537 F.3d at 21. Puerto Rico's tolling principles are contained in Article 1873 of the Civil Code, which states, "[p]rescription of actions is interrupted by their institution before the courts, by extrajudicial claim of the creditor, and by any act of acknowledgment of the debt by the debtor." *Id.* (quoting P.R. Laws. Ann. tit. 31, § 5303). The tolling rules provide three ways in which a plaintiff can interrupt the limitations period. *See Santana–Castro v. Toledo–Davila*, 579 F.3d 109, 114 (1st Cir.2009). An extrajudicial claim, such as an EEOC filing, must meet three criteria in order to toll the limitations period:

The claim must be made by the holder of the substantive right (or his legal representative), ... it must be addressed to the debtor or passive subject of the right, not to a third party, ... and it must require or demand the same conduct or relief ultimately sought in the subsequent lawsuit.

*Moran Vega*, 537 F.3d at 21 (quoting *Rodriguez Narvaez v. Nazario*, 895 F.2d 38, 41–42 (1st Cir.1990)). This has been interpreted as requiring the administrative filing to be identical to the later filed judicial action. *See id.* (citing *Benitez–Pons v. Puerto Rico*, 136 F.3d 54, 59 (1st Cir. 1998)).

■■■■■ Finally, the limitations period is not suspended during the pendency of an administrative claim, but rather the limitations period is reset and begins to run again upon the conclusion of the action that tolled the limitations period. *See Serrano v. Figueroa–Sancha*, 878 F.Supp.2d 301, 310–11 (D.P.R.2012) (citing *Rodriguez v. Suzuki Motor Corp.*, 570 F.3d 402, 408 (1st Cir.2009)); *see also Diaz de Diana v. A.J.A.S. Ins. Co.*, 10 P.R. Offic. Trans. 602, 110 D.P.R. 471 (1980) ("One of the effects of the interruption of the limitation period is that it starts to run again from the beginning.").

■■■■■ While the limitations period is borrowed from local law, the accrual date of a Section 1983 claim is a question governed by federal law. *Calero–Colon v. Betancourt–Lebron*, 68 F.3d 1, 3 (1st Cir. 1995); *see also Garcia Rodriguez v. Laboy*, 598 F.Supp.2d 186, 193 (D.P.R.2008) (citing *Carreras–Rosa v. Alves–Cruz*, 127 F.3d 172, 174 (1st Cir.1997)). The general rule is the limitations period of a Section

3. Plaintiff's Section 1988 claim is entirely dependent on the success of her Section 1983 claim. Section 1988 does not apply to Title VII actions. *See* 42 U.S.C. § 1988 (listing Section 1983, but not Title VII as possible dependant claim for attorney's fees). Individual Defendants' Title VII Liability

1983 claim begins to run when the plaintiff knows, or has reason to know, of the injury which is the basis for his claim and the person who caused it. *Gonzalez v. U.S.*, 284 F.3d 281, 288 (1st Cir.2002). Hence, the statute of limitations for tort actions begins to run "from the time the aggrieved person has knowledge thereof." P.R. Laws Ann. tit. 31, § 5298(2); *see also Eva Garcia Perez, Apelante v. Corporacion de Servicios Especializados para la Mujer y la Familia, etc.*, 2008 TSPR 114, 174 D.P.R. 138, 2008 WL 2717833, at *4 (stating statute of limitations commences once injured party knows both that he suffered harm and who is responsible).[4] "Notice of the injury occurs when there exist some outward or physical signs through which the aggrieved party may become aware and realize that he has suffered an injurious after effect, which when known becomes a damage even if at the time its full scope and extent cannot be weighed." *Torres v. E.I. Dupont De Nemours & Co.*, 219 F.3d 13, 19 (1st Cir.2000) (internal quotations and citations omitted).

Defendants contend that Plaintiff's Section 1983 claim, as well as the pendent local law claims, are time-barred, and therefore must be dismissed. The facts giving rise to Plaintiff's cause of action occurred in late 2009 and early 2010. As the present case was filed on February 9, 2012, well after the one-year limitations period passed, Plaintiff must have tolled the statute of limitations in order for the court to properly adjudicate the claims.

### 1. Consideration of EEOC Complaint & Court of First Instance Filing

██ At the outset, the court must determine whether it may rely upon Plaintiff's EEOC complaint and the complaint Plaintiff filed with the Court of First Instance. Plaintiff argues it is improper for

the court to consider said documents at this time because Plaintiff did not rely upon the documents in her complaint. Plaintiff argues the court may only rule on whether she has properly stated a claim by using the facts as pleaded in the complaint and nothing else. (*See* Docket No. 24 at 2–3.) Defendants disagree and argue the court may, and should, consider the documents in order to determine whether the court has jurisdiction to adjudicate the claims. (*See* Docket No. 26.)

The general rule is that a court may not consider documents that are outside of the complaint, unless the court converts the motion to dismiss into a motion for summary judgment. *See Alt. Energy, Inc. v. St. Paul Fire and Marine Ins. Co.*, 267 F.3d 30, 33 (1st Cir.2001). A narrow exception exists for documents " 'which are not disputed by the parties; for official public records; for documents central to plaintiffs' claim; or for documents sufficiently referred to in the complaint.' " *Id.* (quoting *Watterson v. Page*, 987 F.2d 1, 3 (1st Cir.1993)).

Plaintiff referred to her EEOC filing in her complaint. (*See* Docket No. 1 ¶ 3.) Additionally, Plaintiff admits the authenticity of the complaint with the Court of First Instance in her sur-reply. (*See* Docket No. 30 at ¶ 2.) As both the EEOC complaint and the local court complaint fit one of the exceptions to the general rule, the court may consider the documents without converting the motion to dismiss into a motion for summary judgment. *See Alt. Energy, Inc.*, 267 F.3d at 33.

### 2. The Statute of Limitations Bars Plaintiff's Section 1983 and Local Law Claims

██ Plaintiff argues various instances of discrimination occurred in late 2009 and early 2010, including her transfer to the

**4.** The court notes the date of accrual would be the same under federal or local law.

Stolen Property Division on Juana Diaz in January 2010. Plaintiff also alleges Manzur–Ramos filed a false sexual harassment complaint against her in retaliation for her complaints. On the whole, Plaintiff's discrimination claims accrued in January 2010. While some of the events Plaintiff cites to support her claims occurred in 2009, the discriminatory results of these events accumulated in January, 2010. Plaintiff had knowledge of the discriminatory acts and was on notice that she was being discriminated against, at the very latest, by January 2010. Plaintiff filed her EEOC complaint on January 13, 2010, alleging sex discrimination and retaliation. (*See* Docket No. 36–1.) As stated above, the claims contained in the EEOC complaint must be identical to the claims in the current suit for tolling to apply. *See Moran Vega*, 537 F.3d at 21; *Santana–Castro*, 579 F.3d at 115. Because the discriminatory acts took place in January 2010, Plaintiff must demonstrate that the claims were tolled when she filed the EEOC complaint, and then tolled again when she filed her complaint in the Court of First Instance.

Focusing on the EEOC complaint, it is clear there is a pellucid identity issue between the defendants listed in the EEOC complaint and the present suit. Only PRPD was named in the EEOC complaint; therefore, there is no identity between the individual defendants named in the present complaint and the EEOC complaint. The only actions that were tolled by the EEOC complaint were Plaintiff's sex discrimination and retaliation claims against PRPD. While such an omission is usually fatal, in this case, Plaintiff also filed the action in local court within the limitations period.[5]

Plaintiff filed her complaint in local court on November 8, 2010. This complaint was filed within the one-year limitations period, which was due to expire in January 2011. The claims in that case were brought against ·PRPD and all the individual defendants, with the exception of Diaz Colon. That suit was brought pursuant to the Article II, Sections 1, 7, and 8 of the Puerto Rico Constitution, Law 114, and Articles 1802 and 1803 of the Civil Code. As is easily discernable, this suit does not allege causes of action under the federal Constitution or laws, therefore, Plaintiff failed to toll her federal law claims by filing the suit in the Commonwealth courts.

Additionally, Plaintiff did not include her Law 69 or Law 100 claims in the state court complaint. The only claims tolled by the state court action that were included in the present complaint were Plaintiff's claims under Article II, Section 1 of the Puerto Rico Constitution and Article 1802. These claims are the subject of later section of this Opinion and Order.

### 3. The Tolling of Plaintiff's Title VII Claim

Plaintiff's Title VII claim against PRPD was properly tolled. Plaintiff filed her EEOC complaint on January 13, 2010. The EEOC issued its right to sue letter on November 10, 2011. This administrative filing suspended the limitations period because the EEOC had jurisdiction to offer Plaintiff the relief requested. *See Sanchez Ramos v. Puerto Rico Police Dept.*, 392 F.Supp.2d 167, 181 (D.P.R.2005) (citing *Cintron v. E.L.A.*, 127 D.P.R. 582, 595,

---

5. The Court notes this omission raises two issues. First whether the statute of limitations has been tolled. The second is whether Plaintiff exhausted her administrative remedies prior to filing suit. The Court notes the distinction, as the present facts illustrate, failure to include a party in an EEOC complaint may not necessarily violate statute of limitations tolling principles, but will require dismissal for failure to exhaust administrative remedies.

1990 WL 658719 (1990)). The statute of limitations for Plaintiff's Title VII claim began anew on November 10, 2011, thus her filing of the present suit on February 9, 2012 was filed within the one-year window.

#### 4. The Tolling of Plaintiff's Article 1802 Claim

■ The final contention regarding the statute of limitations that the Court must rule upon is whether Plaintiff successfully tolled her Article 1802 claim. It is clear that Plaintiff alleges an Article 1802 claim in both the complaint to this court (Docket No. 1) and in her complaint to the Court of First Instance (Docket No. 20–1). Plaintiff did not specifically cite to Article 1802 in her administrative complaint with the EEOC (Docket No. 34–1). This omission is not fatal for purposes of the Court's statute of limitations analysis.

Article 1802 is Puerto Rico's general tort statute. *See Pagan–Colon v. Walgreens of San Patricio, Inc.*, 697 F.3d 1, 15 (1st Cir.2012). It states:

A person who by an act or omission causes damage to another through fault or negligence shall be obliged to repair the damage so done. Concurrent imprudence of the party aggrieved does not exempt from liability, but entails a reduction of the indemnity.

P.R. LAWS ANN. tit. 31 § 5141. The complaint to the Court of First Instance was filed on December 8, 2010, within the one-year statute of limitations. Once that complaint was dismissed, the one-year limitations period started to run anew. *See Suzuki Motor Corp.*, 570 F.3d at 407 (holding institution of judicial action interrupts running of limitations period and, when dismissal of local action was voluntary, causes limitations period begin again). The local complaint was voluntarily dismissed on February 8, 2012 and the present suit was filed the next day, certainly within one year. Therefore, Plaintiff's Article 1802 claim is not barred by the statute of limitations.

The Court **DENIES** Defendants' motion to dismiss Plaintiff's Article 1802 claim against PRPD and the individual defendants due to violations of the limitations period. Plaintiff tolled these claims by filing her complaint in local court. However, as discussed in the following Section, Plaintiff's Article 1802 claims against the individual defendants are dismissed without prejudice.

### C. Dismissal of Plaintiff's Local Law Claims Against the Individual Defendants

The only remaining local law claims are Plaintiff's claims under Article II, Section 1 and Article 1802.

#### 1. Plaintiff's Article II, Section 1 Claim

Article II, Section 1 of the Puerto Rico Constitution states:

The dignity of the human being is inviolable. All men are equal before the law. No discrimination shall be made on account of race, color, sex, birth, social origin or condition, or political or religious ideas. Both the laws and the system of public education shall embody these principles of essential human equality.

P.R. CONST. Art. II, § 1. This section prohibits sex discrimination, but it is unclear whether this section provides Plaintiff with a private right of action. *See Santiago v. Canon U.S.A., Inc.*, Civil No. 93–2225(DRD), 1997 WL 188453, at *5 n. 2 (D.P.R. March 7, 1997) (stating, "although no private cause of action for sex discrimination has yet been recognized under the Constitution of Puerto Rico, the Supreme Court of Puerto Rico might eventually create a cause of action analogous to the one for violation to the right of privacy.").

■ The Court need not address the issue at this juncture because all federal

claims against the individual defendants have been dismissed. As such, it is within the Court's discretion to decline to exercise jurisdiction over this local law claim. "[A] district court has discretion to decline to exercise supplemental jurisdiction after dismissing 'all claims over which it ha[d] original jurisdiction.'" *Figueroa v. Alejandro*, 597 F.3d 423, 431 n. 10 (1st Cir.2010) (*quoting* 28 U.S.C. § 1367(c)(3)); *see also Rodriguez v. Doral Mortgage Corp.*, 57 F.3d 1168, 1176 (1st Cir.1995) (finding dismissal of supplemental state actions without prejudice appropriate where there is an "unfavorable disposition of a plaintiff's federal claims" before trial); *Martinez v. Colon*, 54 F.3d 980, 990 (1st Cir.1995)(accepting that pendant claims may be dismissed without prejudice when district court "determine[s] so far in advance of trial that no legitimate federal question existed."). As all federal claims against the individual defendants have been dismissed, the Court elects not to exercise its authority to entertain the remaining under supplemental claims. The Court notes that it is particularly prudent to exercise caution in regards to this claim, as it would require the Court to rule on whether Article II, Section 1 provides a private right of action. That question is best answered by the courts of the Commonwealth rather than by the federal court, who would be trailblazing new case law. *See R.R. Comm'n of Texas v. Pullman Co.*, 312 U.S. 496, 499–500, 61 S.Ct. 643 (holding that, if possible, federal courts should demur to state courts asked to construe local law). Accordingly, the Court **DISMISSES without prejudice** Plaintiff's Article II, Section 1 claim.

### 2. Plaintiff's Article 1802 Claim Against the Individual Defendants

The Court also **DISMISSES without prejudice** Plaintiff's Article 1802 claims against the individual defendants for the same reasons discussed above. While the Article 1802 claim would not require the Court to delve into a previously unanswered question of Puerto Rico constitutional law, all federal claims against the individual defendants have been dismissed. At the motion to dismiss stage, and well before trial, it is appropriate for the federal court to exercise its discretion and dismiss without prejudice Plaintiff's Article 1802 claim. *See Doral Mortgage Corp.*, 57 F.3d at 1177.

### 3. Plaintiff's Article 1802 Claim Against PRPD

Unlike Plaintiff's Article 1802 claims against the individual defendants, Plaintiff's Article 1802 claim against PRPD remains. Plaintiff has successfully pleaded violations of Title VII by PRPD, therefore, federal claims remain. As such, the Court **DENIES** Defendants' motion to dismiss Plaintiff's Article 1802 claim against PRPD.

Therefore, the court **GRANTS IN PART** and **DENIES IN PART** Defendants' motion to dismiss Plaintiff's Section 1983 and local law claims.

## V. CONCLUSION

For the reasons set forth above, Defendants' motion to dismiss (Docket No. 16) is hereby **GRANTED IN PART** and **DENIED IN PART**. The surviving claims are Plaintiff's Title VII sex discrimination and retaliation claims against PRPD, as well as Plaintiff's Article 1802 claim against PRPD. The Court hereby **DISMISSES** all other claims.

**IT IS SO ORDERED.**